[Cite as *State v. Scott*, 2014-Ohio-392.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99889**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RAYSHAWN SCOTT

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-570952

**BEFORE:** Kilbane, J., Keough, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 6, 2014

**ATTORNEY FOR APPELLANT**

Robert A. Dixon
4403 St. Clair Avenue
Cleveland, Ohio 44103

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Alison Foy
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Rayshawn Scott ("Scott"), appeals from the order of the trial court that denied his motion to suppress. He assigns the following sole assignment of error for our review:

> The lower court erred in overruling the Appellant's motion to suppress evidence which was obtained in violation of the Fourth Amendment to the United States Constitution.

{¶2} For the reasons set forth below, we reverse the trial court's decision, vacate the conviction, and Scott is ordered discharged.

{¶3} Shortly after midnight on December 19, 2012, Cleveland police arrested Scott in connection with a warrant meant for Deshawn Wiley ("Wiley"), who had apparently used Scott's name as an alias. Scott was booked, but released later that day, after it was determined that he was not Wiley.

{¶4} Several hours after being released, Scott filed a police report regarding the mistaken warrant, complaining that Wiley, a childhood friend, had fraudulently used his identity that resulted in his arrest.

{¶5} On January 17, 2013, Cleveland police officers, while on routine patrol, checked Scott's vehicle registration in the Law Enforcement Automated Data System ("LEADS"). The LEADS information still erroneously linked him to the first-degree felony arrest warrant for Wiley. The officers stopped the vehicle and conducted a

pat-down search. The officers found two small bags of suspected drugs in Scott's pants pocket and arrested him.

**{¶6}** On February 5, 2013, Scott was indicted for one count of possession of less than the bulk amount of methamphetamine and one count of possession of less than the bulk amount of methylenedioxymethamphetamine ("MDMA"), commonly known as ecstasy, in violation of R.C. 2925.11(A).

**{¶7}** On February 15, 2013, Scott filed a motion to suppress the evidence obtained from the traffic stop. He complained that the police did not act in good faith and were derelict in their duties in failing to correct their records to show that there were no outstanding warrants for him at the time of the arrest.

**{¶8}** The trial court held an evidentiary hearing on the motion to suppress on March 26, 2013. Cleveland police officer Aaron Petitt ("Officer Petitt") testified that he and his partner were patrolling the area of West 44th and Clark. Officer Petitt, who is certified to operate the mobile LEADS unit, ran a check on a 1997 blue Chevy Lumina, Scott's vehicle, and learned that there was a first-degree felony arrest warrant attached to the license plate. The officers stopped the vehicle and determined the driver of the vehicle to be Scott. While arresting him on the warrant, the officers conducted a pat-down search and discovered two small plastic bags of suspected drugs.

**{¶9}** Officer Petitt admitted on cross-examination that, during the stop, Scott informed the officers that he had been stopped previously on the warrant and was found not to be the individual that the police were looking for. Officer Petitt further admitted

that Scott informed them that the police had already determined that the warrant information was incorrect. Officer Petitt acknowledged that he did not attempt to verify Scott's information because individuals commonly deny that they are the subject of warrants. He also acknowledged that the information pertaining to the erroneous December 19, 2012 arrest did not "come up on the data." Officer Petitt admitted that he later learned that the warrant was listed in the name of Deshawn Wiley, a.k.a. "Rayshawn Scott, Dejaun Wiley, Rayshawn Walker, Deshawn Kalvin Wiley, Walker Leshawn, Michael Montgomery."

**{¶10}** Scott presented testimony from Joseph Stottner ("Stottner"), Chris Gerren ("Gerren"), and Cleveland police officer Mark Maguth ("Officer Maguth"). He also testified on his own behalf.

**{¶11}** The testimony of Stottner, Supervisor of the Cleveland City Jail, testified that the booking information showed that Scott was arrested on December 19, 2012, and that later that same day, he was released from a county warrant and a fugitive warrant on an "order of release from the Adult Parole Authority," signed by Detective Gerald Hall ("Detective Hall").

**{¶12}** Gerren, from the fugitive unit of the Ohio Department of Rehabilitation and Correction, testified that the fugitive warrant had been issued for Wiley and that one of the alias names, Rayshawn Scott, was not deleted from Wiley's information until Gerren removed it from the Adult Parole Authority database on February 19, 2013, after speaking with defense counsel.

{¶13} Officer Maguth testified that, at approximately 9:00 p.m. on December 19, 2012, he prepared a report detailing the identity fraud complaint that Scott made to him on that date. Pursuant to this report, Scott complained that he had been the victim of identity fraud and erroneously arrested in connection with a warrant for Wiley. Officer Maguth confirmed Scott's statement with the jailer and verified Scott's claims. Officer Maguth faxed his report to the record management unit and financial crimes unit for follow-up. Officer Maguth admitted, however, that he is not a custodian of police business records and his job duties do not authorize him to go into the LEADS system and remove warrants.

{¶14} Scott testified that, following the first mistaken arrest on December 19, 2012, he immediately made a police report to complain that he was the victim of identity fraud. He further testified that Wiley, who is in fact his childhood friend, had used his name as an alias. Scott left the police station with a copy of the report and believed that the matter had been resolved. At the time of the second mistaken arrest, on January 17, 2013, Scott again explained that the warrants were not his, and that he had been through the same ordeal three weeks earlier. He asked the officers to call the Adult Parole Authority for verification; however, the officers did not attempt to verify the information.

{¶15} On April 22, 2013, the trial judge denied the motion to suppress, and Scott pled no contest to the charges. The court sentenced him to time served, 75 days, and postrelease control sanctions.

Motion to Suppress

**{¶16}** In an appeal from a decision on a motion to suppress, the reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The reviewing court applies a de novo standard of review to the trial court's conclusion of law, however, and determines whether the facts satisfy the applicable legal standard. *Id.*

**{¶17}** The Fourth Amendment to the United States Constitution provides protection against unreasonable searches and seizures. *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶ 10. Searches conducted without a lawful warrant are per se unreasonable, subject to certain specific exceptions. Evidence obtained by searches and seizures in violation of the Constitution is inadmissible in accordance with the "exclusionary rule." *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

**{¶18}** In *United States v. Leon*, 468 U.S. 897, 918, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the court observed that the deterrent effect of the exclusionary rule "must alter the behavior of individual law enforcement officers or the policies of their departments." It is aimed at police procedures and designed to produce systematic deterrence. *Id.* The court explained:

> If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.

*Id.* at 919, quoting *United States v. Peltier*, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975).

{¶19} The *Leon* court established the "good faith" exception to the exclusionary rule where the officers acted in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.  *Id.* at 918-923.

{¶20} In this matter, the state argues that the good faith exception to the exclusionary rule is applicable, in accordance with the decision in *Herring v. United States*, 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009).  In that case, the Supreme Court of the United States considered whether the good faith exception to the exclusionary rule is applicable where the police department failed to update their database to reflect that an arrest warrant had been recalled and the arresting officers relied upon the mistaken information and arrested an individual on the recalled warrant.  In that case, an employee of the sheriff's office failed to update the sheriff's computer records to note that the warrant for Herring's arrest had been rescinded.  Herring's automobile was searched after he was arrested by an officer who acted upon misinformation from "negligent bookkeeping."  *Herring*, 555 U.S. at 137.  The court acknowledged that the arrest was conducted in violation of the Fourth Amendment, but found that the arrest resulted from a bookkeeping error, due to "simple isolated negligence attenuated from the arrest," and not intentional, patently unconstitutional conduct that is the core concern of the exclusionary rule.

**{¶21}** The court cautioned that it "did not suggest that all record-keeping errors by the police are immune from the exclusionary rule," and that the question turns on whether "the conduct is so objectively culpable as to require exclusion." The court held that evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment. The court explained:

> If the police have been shown to be reckless in maintaining a warrant system, or to have knowingly made false entries to lay the groundwork for future false arrests, exclusion would certainly be justified under our cases should such misconduct cause a Fourth Amendment violation.

*Id*. at 146.

**{¶22}** In addition, the court opined that if the database is unreliable or "where systemic errors were demonstrated, it might be reckless for officers to rely on an unreliable warrant system." *Id*.

**{¶23}** In this matter, the evidence indicates that Scott was first arrested because of mistaken warrant information on December 19, 2012. Later that same day, the mistake was detected, and he was released from a county warrant and a fugitive warrant on "order of release from the Adult Parole Authority" signed by Detective Hall. Immediately following his release, Scott made a police report with Officer Maguth and explained that he had been the victim of identity fraud and erroneously arrested in connection with a warrant for Wiley. Officer Maguth confirmed Scott's statement with the jailer, then faxed his report to the record management unit and financial crimes unit for follow-up. Scott was then rearrested on the same mistaken information on January 17, 2013, despite

his claims that there had been another mistake. According to Gerren, the fugitive warrant for Wiley continued to list Scott as an alias until Gerren removed it from the Adult Parole Authority database on February 19, 2013, after speaking with Scott's trial counsel.

**{¶24}** In undertaking our analysis of this matter, we must first note that this matter involves two separate warrantless arrests of Scott. With regard to the first arrest on December 19, 2012, by application of *Leon* and *Herring*, this court would apply the good faith exception to the exclusionary rule in connection with any evidence obtained at the time of the first arrest because of the erroneous information linking Scott to the warrant for Wiley. With regard to the second arrest from the same erroneous information, however, we are compelled to reach a different result. The record clearly establishes that despite Scott's December 19, 2012 release from jail upon the discovery of the erroneous information, his meeting with the police, and the police report identifying him as a victim of identity fraud, the warrant information was never withdrawn or corrected. The same error continued to link him to Wiley, and the error remained uncorrected until defense counsel was able to obtain a correction, which was well after the second arrest.

**{¶25}** Therefore, this court concludes that the department was on notice of the erroneous information for almost a month prior to the second arrest. Further, because the erroneous information remained uncorrected until after the second arrest, this matter involves the "reckless, or grossly negligent conduct, or * * * recurring or systemic negligence" condemned in *Herring*. Moreover, neither this court nor the parties can

locate a single case authorizing application of the exclusionary rule to a situation involving two separate and successive erroneous arrests based upon the same erroneous information where the police are on notice of the error immediately after the first arrest. In our view, application of the good faith exception cannot be repeatedly invoked to immunize unlawful arrests from the application of the exclusionary rule.

{¶26} Under the unique circumstances presented herein, we conclude that there has been grossly reckless conduct, as well as recurring, sustained, and systemic negligence that the good faith exception to the exclusionary rule is not applicable and the evidence obtained in connection with the January 17, 2013 arrest must be suppressed.

{¶27} Judgment is reversed, conviction vacated, and Scott is ordered discharged.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN T. GALLAGHER, J., CONCUR