[Cite as *In re G.H.*, 2014-Ohio-2269.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   100274

## IN RE:   G.H.
## A Minor Child

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No.   DL 12120593

**BEFORE:**    Boyle, A.J., Jones, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**    May 29, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY:    Cullen Sweeney
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio    44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Carl Mazzone
Assistant County Prosecutor
1200 Ontario Street
9th Floor
Cleveland, Ohio    44113

MARY J. BOYLE, A.J.:

**{¶1}** Defendant-appellant, G.H., was adjudicated delinquent of carrying a concealed weapon following a trial on the state's complaint. He appeals the trial court's decision denying his motion to suppress the gun discovered on him in the course of a traffic stop. Finding no merit to the appeal, we affirm.

### Suppression Hearing

**{¶2}** The following evidence was presented at the hearing on G.H.'s motion to suppress.

**{¶3}** In 2012, Brian Sanders, a Cleveland Metropolitan School District ("CMSD") security officer, and Michael Cicero, a CMSD police officer, both worked at John Adams High School, located at Martin Luther King Boulevard and Corlett Avenue. At some point in late November, early December 2012, Sanders and Cicero were shown a series of Instagram photographs, which depicted G.H. "brandishing" a firearm. According to Cicero, G.H. was ultimately suspended for the photographs and then subsequently withdrawn from the school by his parents. As a result of his suspension, G.H. was not permitted on school property.

**{¶4}** On December 13, 2012, John Adams High School was on "high alert" due to recent gang activity and fighting in the neighborhood. Sanders testified that he has been trained to look out for any student who is trespassing in the area when the school is on "high alert" status. At dismissal on December 13th, Sanders observed G.H. in the front seat of a vehicle, which pulled into the school parking lot and quickly left. Since G.H. had previously been suspended, Sanders radioed CMSD police officer Matthew

Cicero, who was stationed on Corlett Avenue, and notified him that he had observed G.H. in a vehicle on school property.

{¶5} Cicero testified that, upon receiving Sanders's radio call, he spotted the red Grand Am Pontiac with G.H. in the passenger front seat pull out of the school parking lot and travel past him down Corlett Avenue. According to Cicero, he started to follow the vehicle, which had five occupants, and radioed his partner, Officer Gabriel Carrasquillo, requesting back up. While following the vehicle, Cicero noticed that the vehicle registration tag was partially obstructed. When his partner arrived to assist, Cicero initiated the traffic stop of the vehicle on the grounds that the license plate holder unlawfully obstructed the registration sticker.

{¶6} Cicero further testified that, prior to exiting his vehicle, he called in the license plate to the CMSD dispatch center. He then approached the driver's side of the vehicle, while his partner approached the front seat passenger side where G.H. was seated. After Cicero began speaking with the driver, Leona Moore, as to why she was pulled over, dispatch radioed Cicero that Cuyahoga Regional Information System ("CRIS") indicated that the vehicle was stolen. In response, Cicero asked dispatch to notify the Cleveland police to "come and assist" because they had a suspected stolen vehicle. Moore insisted that the vehicle was not stolen and provided her license and registration.

{¶7} Cicero testified that after hearing that the vehicle was stolen, he told Officer Carrasquillo "to start pulling people out of the vehicle until we could figure out

if the car was stolen or not." He further asked the dispatcher to notify the Cleveland police to "come out and assist" because they had a suspected stolen vehicle. Cicero testified that the removal of the occupants was a matter of "officer safety." Upon patting down G.H. for weapons, Officer Carrasquillo felt a bulge and informed Officer Cicero that G.H. had a gun. Officer Cicero removed a loaded revolver from G.H.'s front pocket. Officer Carrasquillo handcuffed G.H. and placed him in the back of the cruiser. The remaining occupants were searched but the police found no weapons on them.

{¶8} Cleveland police officer Pedro Vargas responded to the dispatch call and arrived to the scene after G.H. had been arrested. Officer Vargas ran the license plate on his computer and discovered that the vehicle was not stolen. According to Vargas, although the "[s]tolen vehicle screen popped up," it was "not a stolen vehicle." Vargas explained that a stolen vehicle screen pops up sometimes when there is a "partial VIN hit," which means that many, but not all, of the VIN numbers coincide with a stolen vehicle. Officer Vargas further explained that by going farther down on the script, the screen will identify a partial VIN. Officer Vargas ran the license plate twice to make sure that it was not stolen and had to inform the CMSD officers "at least twice" that the vehicle was not stolen.

{¶9} G.H. presented the testimony of Moore in support of his motion. According to Moore, she never pulled into the school parking lot. Moore testified that she picked up her daughter at Gay Avenue, along with three other friends, including

G.H.    Moore testified that Officer Cicero pulled her over and approached her car once another officer arrived.    Moore further stated that Officer Cicero told her that he pulled her over because of her "sticker" on her license plate.    Moore expressed her disbelief that it was not compliant, explaining that she had recently been pulled over for speeding and the officer never mentioned her sticker.    Moore testified that Cicero also bent down to the car and said, "[G.H.], I need to talk to you.    I've been looking for you, and you know what it's about."    According to Moore, Officer Cicero said this to G.H. immediately and asked G.H. to get out of the car prior to Moore even producing her license and registration.

{¶10} Moore further identified a picture of her license plate and confirmed that the photograph accurately reflected her license as it appeared on the day of the traffic stop, including the "Find-a-Cure" pink bracket around the license.    The bottom part of the bracket covers part of the validation sticker in the right-hand corner, which Moore conceded on cross-examination.    Upon questioning from the magistrate, Moore further indicated that she was not aware that her birthday is listed on the bottom of the tag and conceded that those numbers could not be seen with the bracket covering them.

{¶11} The magistrate denied G.H.'s motion to suppress, noting, among other things, the following on the record:

> For the record, an obstructed plate includes the tags which are obstructed if the officer can't see them.    There's no such thing as a partial obstruction of the plate or tags.

> I spent a good amount of time as a Prosecutor for the City of Cleveland doing traffic cases, and I can tell you for a fact that if it's

obstructed, it's obstructed, which is how I could ask the question about the birth date, which the officer couldn't see.

So in addition to that, when they got to the car, they received a notice that the car was stolen, and though it turned out to be an incorrect notice, as counsel has heard and as the Court has heard, at the time the officer believed reasonably that the car could have been stolen and did all the appropriate things to thankfully find out that it was not. But at the time that they were acting, at the time when [G.H.] was pulled from the car, they did have him on the property when he was suspended, suspected of carrying a gun in the past, and had a right to see for their own safety if he had one on his person that day.

**{¶12}** The juvenile court subsequently overruled G.H.'s objections to the magistrate's decision.

### Adjudication and Sentence

**{¶13}** Following the denial of the motion to suppress, the case proceeded to trial, and the magistrate found G.H. delinquent of carrying a concealed weapon. The juvenile court adopted the magistrate's delinquency finding over G.H.'s objections and ultimately imposed a suspended sentence "until age 21" at the Ohio Department of Youth Services, and placed G.H. on two years of probation.

**{¶14}** G.H. appeals, raising a single assignment of error:

The trial court erred in denying appellant's motion to suppress the evidence in this case as it was obtained in violation of his State and Federal constitutional right to be free of unreasonable searches and seizures.

### Standard of Review

**{¶15}** In *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8, the Ohio Supreme Court set forth our standard of review:

Appellate review of a motion to suppress presents a mixed question of law

and fact.   When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.   Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.   Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.)

Fourth Amendment

{¶16} The Fourth Amendment and the Ohio Constitution, Article I, Section 14, guarantee that individuals be free from unreasonable searches and seizures.   Searches and seizures conducted without a warrant are per se unreasonable unless they come within one of the "'few specifically established and well delineated exceptions.'" *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), quoting *Thompson v. Louisiana*, 469 U.S. 17, 19-20, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984).   Evidence is inadmissible if it stems from an unconstitutional search or seizure. *Wong Sun v. United States*, 371 U.S. 471, 484-485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

{¶17} "An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement."   *State v. Carrocce*, 10th Dist. Franklin No. 06AP-101, 2006-Ohio-6376, ¶ 28 , citing *Terry v. Ohio*, 392 U.S. 1, 20-22, 30-31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).   An officer may conduct an investigative *Terry* stop on an individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent.   *Terry* at 20, 21, 30, 31.

*Initial Stop*

**{¶18}** G.H. first argues that the police lacked reasonable suspicion to justify a *Terry* stop of Moore's car. We disagree.

**{¶19}** It is well established that an officer may stop a motorist upon his or her observation that the vehicle in question violated a traffic law. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996). "[E]ven a de minimis traffic violation provides probable cause for a traffic stop." *Id.* at 9. Moreover, a police officer may stop a suspect when the officer observes a traffic violation, regardless what the officer's real motivation may have been for the stop. *Id.* at 11-12. Indeed, "the the Ohio Supreme Court has determined that stops based upon even minor traffic violations do not run afoul of the Fourth Amendment even if the stopping officer harbors an 'ulterior motive of making the stop, such as suspicion that the violator was engaged in more nefarious criminal activity.'" *State v. Hoskins*, 8th Dist. Cuyahoga No. 80384, 2002-Ohio-3451, ¶ 13, quoting *Erickson*, at syllabus.

**{¶20}** Officer Cicero testified that he pulled Moore's car over because the validation sticker on her license plate was partially obstructed. Under R.C. 4503.21, the failure to display in plain view any validation sticker constitutes a minor misdemeanor. This court has previously recognized that a partially obscured validation sticker constitutes a violation of R.C. 4503.21 because "that statute prohibits any obstruction of 'visibility' of a license plate*." State v. Robinson*, 8th Dist. Cuyahoga No. 85149, 2005-Ohio-2834, ¶ 30.

{¶21} Relying on the Ohio Supreme Court's decision in *State v. Chatton*, 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984), G.H. contends that once Officer Cicero stopped the vehicle and could see that the validation sticker was valid, he had no further authority to detain the vehicle. G.H. focuses on the fact that Moore's validation sticker was not expired, which Officer Cicero knew based on the color of the sticker. But R.C. 4503.21 does not solely require a current validation sticker; it also mandates the manner in which it must be displayed. The record reveals that the validation sticker was obstructed by Moore's license-plate bracket and that the specific expiration date based on her birthday could not be seen. Based on this violation of R.C. 4503.21, Officer Cicero had probable cause to stop the vehicle and request Moore's driver's license and registration. *See, e.g.*, *State v. Fredo*, 7th Dist. Columbiana No. 11 CO 5, 2012-Ohio-1496 (a violation of the statute supported the officer's detainment of the driver, despite officer ultimately observing the license plate in the rear cab window of the truck); *State v. Phillips*, 2d Dist. Montgomery No. 22918, 2009-Ohio-3519 (officer's ultimate ability to read the plate does not mean no violation of R.C. 4503.21 occurred; officer was not required to turn defendant loose upon reading the plate).

{¶22} For this same reason, G.H.'s reliance on *Chatton* is misplaced. In that case, a police officer stopped the defendant because no license plates were visible on his vehicle. After approaching the car on foot, the officer saw a temporary plate lying on the rear deck under the rear window. At that time, R.C. 4503.21 did not require temporary plates to be displayed in any particular way or even to be "visibly displayed at

all." *Chatton* at 60. Thus, the *Chatton* majority concluded that the officer lacked reasonable suspicion of any legal violation once he determined that a temporary plate existed. Following *Chatton*, however, the General Assembly amended R.C. 4503.21 to require a temporary plate to be displayed in plain view from the rear of a vehicle and to have its visibility unobstructed. *Chatton* is distinguishable because it deals with a temporary tag *prior* to the amendments to R.C. 4503.21. *See Phillips* at ¶ 11-12; *Fredo* at ¶ 21.

**{¶23}** Accordingly, because an obstructed validation sticker constitutes a violation of R.C. 4503.21, Officer Cicero had reasonable grounds to stop the vehicle.

*Report of Stolen Vehicle and Exclusionary Rule*

**{¶24}** G.H. further contends that the CMSD police unlawfully detained the vehicle beyond the scope of the initial traffic stop because Officer Cicero unreasonably relied on erroneous information that the vehicle was stolen.

**{¶25}** "The detention of a stopped driver may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." (Citations omitted.) *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 15.

**{¶26}** Here, the record reveals that, while Officer Cicero was discussing the traffic stop with Moore and before anyone was asked to leave the vehicle, the CMSD dispatch notified Officer Cicero that its system identified the vehicle as stolen.

Ordinarily, a report of a stolen vehicle reasonably justifies a further detention to allow the officer to investigate. The question here, however, is whether Officer Cicero reasonably and in good faith relied on this information, which ultimately proved to be incorrect, to justify an exception to the exclusionary rule. We find that he did.

{¶27} In *United States v. Leon*, 468 U.S. 897, 918, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the court recognized that the exclusionary rule is aimed at police procedures and designed to produce systematic deterrence. *State v. Scott*, 8th Dist. Cuyahoga No. 99889, 2014-Ohio-392, ¶ 18. The court explained:

> If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.

*Leon* at 919, quoting *United States v. Peltier*, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975).

{¶28} The *Leon* court established the "good faith" exception to the exclusionary rule where the officers acted in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. *Leon* at 918-923.

{¶29} The record reveals that the CMSD dispatcher identified the vehicle as being stolen because the dispatcher failed to read the entire screen, relying solely on a partial VIN hit. G.H. maintains that CMSD officers were "'reckless' in relying on a partial VIN hit that they knew did not necessarily indicate that the car was stolen and the

accuracy of which could easily be verified by simply looking further down on the same computer screen." He further contends that Officer Cicero's reliance was unreasonable due to the fact that partial VIN hits happen "quite often."

{¶30} Contrary to G.H.'s assertion, there is no evidence in the record that Officer Cicero knew that the dispatcher was relying solely on a partial VIN hit. Further, there is no evidence in the record that the CMSD dispatch regularly reports vehicles as being stolen based on partial VIN hits, resulting in the unlawful detention of people. While the record does contain evidence that the system often identifies a vehicle as being stolen based on a partial VIN hit, the testimony revealed that the bottom of the screen clarifies whether the vehicle is actually stolen. Although the dispatcher was negligent in reporting the vehicle as stolen, we find no basis to conclude that Officer Cicero unreasonably relied on the dispatcher's report in this single instance. Accordingly, we find that a "good-faith" exception to the exclusionary rule applies.

*Terry Pat-Down and Frisk*

{¶31} In his final argument, G.H. argues that the CMSD police "did not have reasonable suspicion that he was armed and presently dangerous to justify the *Terry* frisk," thereby violating the Fourth Amendment. He contends that the only reason offered for the frisk was the erroneous report of a stolen vehicle, prompting the officers to exercise their routine practice of ordering the occupants out of the vehicle and conducting a "*Terry* pat-down" when a suspected felony is involved.

**{¶32}** "Under *Terry*, a limited protective search of the detainee's person for concealed weapons is justified only when the officer has reasonably concluded that 'the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others * * *.'" *State v. Henderson*, 8th Dist. Cuyahoga No. 88250, 2007-Ohio-2461, ¶ 5, citing *Terry,* 392 U.S. at 24, 88 S.Ct. 1868, 20 L.Ed.2d 889. It is well settled that "an officer is not permitted to conduct a search merely for convenience, nor may an officer conduct a search as part of his or her normal routine or practice." *State v. Stiles*, 11th Dist. Ashtabula No. 2002-A-0078, 2003-Ohio-5535, ¶ 16, citing *State v. Lozada*, 92 Ohio St.3d 74, 77, 748 N.E.2d 520 (2001). The test is whether the officer can reasonably conclude, based upon the totality of the circumstances, that the person detained is armed and that a protective search is necessary for his safety and the safety of others. *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph two of the syllabus.

**{¶33}** Further, in addition to considering the officer's stated reasons for conducting a protective pat-down, courts will also consider all other facts that the officer was aware of at the time of the occurrence in determining whether his or her search was reasonable. *Stiles* at ¶ 18, citing *State v. Evans*, 67 Ohio St.3d 405, 413, 618 N.E.2d 162 (1993).

**{¶34}** Here, the record reveals that in addition to reasonably relying on the report that the vehicle was stolen, Officer Cicero had just observed G.H. trespassing on school property while the school was on "high alert" status. It is also undisputed that Officer

Cicero had personal knowledge of G.H. being recently suspended as a result of photographs on social media depicting G.H. brandishing a firearm. Further, the officers were outnumbered in this case five to two. Based on the totality of the circumstances, we find that the officers reasonably concluded that a protective pat-down was necessary for their safety.

{¶35} Accordingly, we find that the trial court properly denied G.H.'s motion to suppress.

{¶36} The sole assignment of error is overruled.

{¶37} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____

MARY J. BOYLE, ADMINISTRATIVE JUDGE

LARRY A. JONES, SR., J., and
MARY EILEEN KILBANE, J., CONCUR