[Cite as *State v. Grayson*, 2015-Ohio-3229.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102057**

# STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

# JOHN I. GRAYSON, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-14-582878-A, CR-14-582878-B, and CR-14-582878-C

**BEFORE:** E.T. Gallagher, J., Jones, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** August 13, 2015

**ATTORNEYS FOR APPELLANT**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Amy Venesile
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEES**

**For John I. Grayson**

Patrick Leary,
Patrick S. Leary, Attorney at Law
P.O. Box 770968
Lakewood, Ohio 44107

**For Carl L. Pannell**

Leif Christman
1370 Ontario Street, Suite 2000
Cleveland, Ohio 44113

**For David Solomon**

Edward F. Borkowski, Jr.
P. O. Box 609151
Cleveland, Ohio 44109

EILEEN T. GALLAGHER, J.:

{¶1} Plaintiff-appellant, state of Ohio ("the state"), appeals an order granting a motion to suppress evidence and raises the following assignment of error for our review:

> The trial court erred in granting defendants' motion to suppress, as there was probable cause to search the vehicle after officers conducted a legal traffic stop, then detected a strong smell of marijuana, and observed a suspected package of marijuana in plain view in the rear of the vehicle.

{¶2} We find merit to the appeal, reverse the trial court's judgment, and remand the case to the trial court for further proceedings.

## I. Facts and Procedural History

{¶3} Defendants-appellees, John Grayson ("Grayson"), David Solomon ("Solomon"), and Carl Pannell, Jr. ("Pannell") (collectively "appellees") were charged with one count each of drug trafficking, drug possession, and possession of criminal tools. The indictment arose from an incident in which Brook Park police discovered a pound of marijuana in appellees' car. Appellees filed a motion to suppress the one-pound bag of marijuana, arguing the police lacked the necessary probable cause to effect the warrantless search of their car.

{¶4} At a suppression hearing, Detective Mike Tornabene ("Tornabene"), a detective assigned to the High Intensity Drug Trafficking Area task force, testified that he regularly conducts surveillance of hotels in Brook Park looking for drug activity. In February 2014, Tornabene learned that Grayson, who was a California resident, had been staying at a Howard Johnson's hotel on Snow Road in Brook Park for four days and had

been extending his stay one day at a time. Grayson was also refusing housekeeping service. Based on his training and experience, Tornabene explained that although these are legal activities, they are often indicative of drug trafficking.

{¶5} Tornabene searched Grayson's criminal history by running Grayson's name through the El Paso Intelligence Center ("EPIC") database. He discovered that Grayson has an extensive criminal history that includes multiple drug offenses. EPIC, which provides additional information not included in the standard criminal background check, revealed that two months earlier, federal agents had seized approximately $15,000 from Grayson in Orlando, Florida. Tornabene called one of the federal agents in Orlando who advised him that Grayson was suspected of transporting marijuana, but no marijuana was found at the time the money was seized. Tornabene did not know what happened to the money after the initial seizure or whether criminal charges were filed against Grayson in Florida.

{¶6} After observing these initial drug trafficking indicators and learning of Grayson's criminal history, Tornabene began surveillance on Grayson's hotel room on February 19, 2014. Grayson's hotel room opened to the outside, and Tornabene could observe people coming in and out of the room from across the street.

{¶7} At approximately 2:30 p.m., a Cadillac entered the hotel parking lot. Tornabene observed Grayson leave his hotel room and seat himself in the back seat of the Cadillac, which was occupied by two men in the front seat. Seven minutes later, Grayson exited the vehicle and returned to his hotel room. Tornabene followed the

Cadillac for several miles but lost it near East 116th Street and Union Avenue in Cleveland. (Tr. 65.)

{¶8} Meanwhile, other officers, who stayed at the hotel, observed Grayson move his belongings out of his room and into another room. Tornabene testified that drug dealers oftentimes change rooms to protect themselves from their drug dealing partners, who may return intending to rob them. The detectives ran the Cadillac's plates and found that it was registered to a Carl Pannell, Sr. As a result of a database search, detectives believed that the driver was the owner's son, whose name was Carl Pannell, Jr. An EPIC search of Pannell revealed that law enforcement had previously seized tens of thousands of dollars from Pannell in 2000 and 2003. EPIC also indicated that Pannell was a suspect in different cases pending in the Drug Enforcement Agency ("DEA"). The DEA listed Pannell as a drug and money courier.

{¶9} In the evening, Pannell and an individual, later identified as Solomon, returned to the Howard Johnson hotel and met with Grayson in his original hotel room. Moments later, all three men returned to the Cadillac and pulled out of the parking lot. Tornabene followed the Cadillac to a nearby shopping plaza where Grayson exited the vehicle. Tornabene followed Grayson into a Marc's store where he observed Grayson purchasing money orders at the customer service counter. A few minutes later, Solomon joined Grayson at the counter. Tornabene testified that Grayson placed tall stacks of cash on the counter that he believed totaled approximately $10,000. Tornabene

explained that drug dealers often convert cash to money orders because they are easier to carry.

{¶10} Based on his observations throughout the day, up to and including the purchase of money orders, Tornabene believed Grayson and his friends were engaged in drug trafficking and called a patrol officer to stop the Cadillac in the parking lot. Patrol Officer Thomas Chmura ("Chmura") responded to the scene in a marked car, with the overhead lights activated. He exited his vehicle and approached the Cadillac, which was illegally stopped in a fire lane. Pannell, who was the only person in the car, started to move away when Tornabene's police car pulled in front of the Cadillac and blocked the car in the fire lane. Tornabene joined Chmura and they approached the Cadillac together; Chmura on the driver's side where the window was open, and Tornabene on the passenger's side of the car. While they were standing outside the car, they simultaneously recognized a strong odor of marijuana.

{¶11} Officer Chmura testified that after smelling the marijuana, they searched the car and found a pound of marijuana wrapped in plastic on the floor behind the passenger's seat. The officers arrested Pannell, Solomon, and Grayson for drug possession and drug trafficking. Grayson subsequently consented to a search of his hotel room where officers recovered a small amount of marijuana, a couple of cell phones, and some money.

{¶12} In closing arguments, appellees asserted the police detained them solely on "a hunch" and without probable cause. They argued that police made the arrests after

only a brief surveillance spanning eight to ten hours during which they observed nothing but lawful activity. There is nothing illegal about staying in a hotel on a day-to-day basis, nor is it illegal to purchase money orders with cash. Appellees further argued that since the police did not observe any illegal activity, they had no basis to stop them.

{¶13} The state maintained that, under the totality of the circumstances, the officers had probable cause to arrest appellees. The state acknowledged that each one of Grayson's activities, by itself, was innocuous, but when all of his actions were considered together with his and Pannell's history of drug trafficking, the circumstances indicated that appellees were engaged in drug activity. The state also argued the detention of the Cadillac was legal even in the absence of probable cause because the car was illegally parked in a fire lane.

{¶14} The trial court granted appellees' motion to suppress. In the court's order, it reasoned:

> All of the various activities observed by the detective and his team are well-known indicators of drug related activities. There was a basis to have a reasonable suspicion of something related to drug trafficking. It would have been reasonable to seek a search warrant to try and discover and determine if any such activity was taking place. Here, we have a traffic stop that was a pretext to inventory the vehicle and as a result was a violation of the Fourth Amendment rights of the defendants. While a minor traffic violation is sufficient to support a stop and search, it does not apply in this case since it was previously determined by the detective that the car was going to be detained.

The state now appeals from that judgment.

## II. Law and Analysis

{¶15} In its sole assignment of error, the state argues the trial court erred in granting appellees' motion to suppress. The state contends the police had probable cause to search the Cadillac after detecting the strong smell of marijuana during a lawful investigative stop.

{¶16} Appellate review of a motion to suppress involves a mixed question of law and fact. "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility." *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). The reviewing court must accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Accepting the facts as true, the reviewing court must then independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard. *Id.*

{¶17} The Fourth Amendment of the U.S. Constitution, which is enforceable against the states through the Due Process Clause of the Fourteenth Amendment, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Article I, Section 14 of the Ohio Constitution has language almost identical to the Fourth Amendment and affords Ohioans the same protections

against unreasonable searches and seizures. *State v. Robinette*, 80 Ohio St.3d 234, 245, 685 N.E.2d 762 (1997).

{¶18} There are, however, exceptions to the Fourth Amendment's warrant requirement. For example, a warrantless arrest is constitutionally valid if, at the time of the arrest, the facts and circumstances within the officer's knowledge were sufficient to warrant a prudent person to believe that the suspect had committed an offense. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Probable cause for a warrantless arrest exists when the officer has sufficient information, from his own knowledge or a reliable source, to merit a reasonable belief that the accused has committed a felony. *State v. Timson*, 38 Ohio St.2d 122, 127, 311 N.E.2d 16 (1974).

{¶19} A warrantless arrest does not require the officer's absolute knowledge that a crime has been committed; it requires only a reasonable belief based on the totality of the circumstances. *Id*. Probable cause is a pliant common sense standard that requires only a showing that a probability, rather than an actual showing, of criminal activity existed. *Texas v. Brown*, 460 U.S. 730, 732, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *Illinois v. Gates*, 462 U.S. 213, 245, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶20} A "*Terry* stop" is another exception to the warrant requirement that allows an officer to stop and investigate suspicious behavior, even without probable cause to arrest, if the officer has a reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). Reasonable suspicion can arise from information that is less reliable than that required to show

probable cause. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). However, it requires something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry* at 27. The propriety of an investigative stop must be viewed in light of the totality of the circumstances "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

**{¶21}** When considering the "totality of the circumstances," police officers are permitted to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *U.S. v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). A court reviewing the officer's actions must give due weight to the officer's experience and training and must view the evidence as it would be understood by those in law enforcement. *Andrews* at 87-88.

**{¶22}** Tornabene had over 11 years of experience investigating drug activity as a detective with the High Intensity Drug Trafficking Area task force. Before detaining appellants, Tornabene knew that Grayson had a history of many drug offenses, and federal agents had previously seized tens of thousands of dollars from both Grayson and Pannell at different times. The DEA also listed Pannell as a suspected drug and money courier in its database.

**{¶23}** Tornabene observed that Grayson, who was extending his hotel stay on a daily basis, moved his belongings to another room after Solomon and Pannell left the

hotel parking lot. In Tornabene's training and experience, these actions were indicative of drug trafficking because drug dealers often hide from their criminal associates who may return to rob them of their money or drugs. Tornabene later saw Grayson purchasing money orders with thousands of dollars in cash. According to Tornabene, drug traffickers often convert large sums of money into money orders because they are easier to carry. Solomon joined Grayson at the counter and obviously knew what Grayson was doing. Pannell waited for Grayson and Solomon in the car. Appellees appeared to be working together in a drug-trafficking venture.

{¶24} Under the totality of these circumstances, Tornabene reasonably suspected that Grayson, Solomon, and Pannell were trafficking drugs. In other words, Tornabene had the reasonable suspicion necessary to conduct an investigative stop of appellees. Tornabene testified that when he began questioning Grayson and Solomon in the store and asked Officer Chmura to detain the Cadillac, appellees were not under arrest; the officers were merely investigating suspected criminal activity. (Tr. 33, 74-75.)

{¶25} When Tornabene and Chmura approached Pannell for questioning, they immediately smelled a strong odor of marijuana emanating from the car. In *State v. Moore*, 90 Ohio St.3d 47, 48, 734 N.E.2d 804 (2000), the Ohio Supreme Court held that "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement."[1] *See also Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct.

---

[1] Tornabene testified that he observed a large clear plastic bag containing

2013, 144 L.Ed.2d 442 (1999) (Once police have probable cause to believe that a vehicle contains contraband, they may search a validly stopped car based on the automobile exception to the warrant requirement.). Therefore, the police were also justified in searching appellees' car for marijuana.

{¶26} Having found a large quantity of marijuana, the police had probable cause to believe that appellees had committed a crime. They therefore had probable cause to arrest appellees for possession of drugs, in violation of R.C. 2925.11(A), and drug trafficking, in violation of R.C. 2925.03(A)(2). None of the police actions leading up to appellees' arrest violated appellees' Fourth Amendment rights.

{¶27} At oral argument, Grayson asserted that Officer Chmura lacked authority to stop Pannell in the Cadillac because Chmura did not know the reason for the stop. Grayson relies on *Cleveland v. Sanders*, 8th Dist. Cuyahoga No. 83073, 2004-Ohio-4473, to support his argument that the officer stopping the defendant "must be able to articulate specific facts which, along with the reasonable inferences arising from those facts, reasonably warrant the intrusion which the stop comprises." *Id.* at ¶ 12. In *Sanders*, the trial court granted the defendant's motion to suppress evidence of his intoxication in a DUI case. The arresting officer in *Sanders*, testified that he arrested the defendant for DUI even though "the defendant did not weave, * * * properly executed a lane change using his signal, * * * was cooperative, * * * did not fumble when retrieving his driver's

marijuana in plain view. Officer Chmura testified that the marijuana was found under some clothing. Regardless of whether the marijuana was in plain view, the officers smelled the marijuana.

license [and] * * * was steady * * * when standing outside the vehicle." *Id.* The officer also admitted that the breath analyzer he used was not approved by the Ohio Department of Health. *Id.*

{¶28} *Sanders* is distinguishable from the instant case in several respects. Tornabene and the other investigating officers collected a substantial amount of evidence indicative of drug trafficking during their eight to ten hour investigation. Under the totality of the circumstances, the officers had reasonable suspicion to stop appellees to investigate their suspected drug activity. At the time the officers initiated the investigative stop, they did not have probable cause and appellees were not under arrest. Two trained officers smelled marijuana, which gave the officers the probable cause necessary to arrest appellants. The fact that Chmura was unacquainted with the details of the investigation is irrelevant. Chmura was acting as Tornabene's agent when he arrived in uniform in a marked car with the overhead lights activated, and Tornabene was present when the stop was made.

{¶29} Furthermore, the court erred in concluding that the traffic stop of the Cadillac violated appellees' Fourth Amendment rights because the stop was a pretext for an illegal seizure. The Ohio Supreme Court has held that

> [w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or is occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity.

*Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus.

**{¶30}** It is undisputed that appellees' Cadillac was parked in a fire lane, in violation of Brook Park Codified Ordinance 351.09(b). Brook Park Codified Ordinance 351.09(b) states that "[n]o person shall stop, stand or park a vehicle for any purpose or length of time * * * in any place marked as a fire lane." The officers had probable cause to believe that a parking violation was occurring, because the statute expressly states that any stop for "any * * * length of time" is a crime. Because the officers were permitted to stop the car for the parking violation, their subjective intent to investigate suspected drug trafficking is irrelevant. *Id.*

**{¶31}** During the lawful stop, police smelled marijuana and thus had probable cause to believe that Pannell possessed marijuana in violation of R.C. 2925.11. As previously stated, the smell of marijuana gave police probable cause to search the Cadillac, pursuant to the automobile exception to the warrant requirement. *Moore*, 90 Ohio St.3d 47, at 48, 734 N.E.2d 804. Therefore, even if the police lacked reasonable suspicion to believe that appellees were engaged in drug trafficking, the stop of the Cadillac was legal because police had probable cause to stop the Cadillac that was parked illegally in a fire lane.

**{¶32}** The sole assignment of error is sustained.

### III.   Conclusion

**{¶33}** Brook Park police reasonably suspected that appellees were engaged in drug trafficking, based on their history of drug trafficking convictions and Grayson's conduct both at the hotel and at the customer service counter at Marc's, which was indicative of drug trafficking. Even in the absence of reasonable suspicion, police had probable cause to stop the Cadillac because it was illegally parked in a fire lane.

**{¶34}** Judgment reversed and case is remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
MELODY J. STEWART, J., CONCUR