[Cite as *State v. James*, 2018-Ohio-5033.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106661**

---

**STATE OF OHIO**

PLAINTIFF-APPELLANT

vs.

**ANTHONY JAMES**

DEFENDANT-APPELLEE

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-620259-A

**BEFORE:** Kilbane, P.J., Celebrezze, J., and Jones, J.

**RELEASED AND JOURNALIZED:** December 13, 2018

**ATTORNEYS FOR APPELLANT**

Michael C. O'Malley
Cuyahoga County Prosecutor
Daniel T. Van
Callista Plemel
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


**ATTORNEY FOR APPELLEE**

Thomas A. Rein
820 West Superior Avenue, Suite 800
Cleveland, Ohio 44113


MARY EILEEN KILBANE, P.J.:

{¶1}   Plaintiff-appellant, the state of Ohio, appeals from the judgment of the common pleas court granting the motions of defendant-appellee, Anthony James ("James"), to suppress evidence and to dismiss a count of having weapons while under disability ("HWWUD"). For the reasons set forth below, we affirm.

{¶2}   In August 2017, James was indicted by information with one count each of HWWUD, carrying a concealed weapon, trafficking, and drug possession. The HWWUD count was based upon a delinquency adjudication when James was a juvenile. These charges arose out of a warrantless search of a legally parked vehicle that James had been sitting in with another man.

{¶3}   In September 2017, James filed a motion to suppress all evidence resulting from the search of the vehicle. In November 2017, James filed a motion to dismiss Count 1,

HWWUD, based upon James's 2009 juvenile delinquency adjudication for burglary. Later that month, the trial court held a hearing on both motions.

{¶4} The following was adduced at the hearing. Seven-year Parma police veteran, Patrolman Richard Morgan ("Officer Morgan"), testified that in the early morning hours of August 6, 2017, he was patrolling the area near Russell Avenue in Parma, Ohio. At approximately 3:40 a.m., Officer Morgan was driving eastbound on Russell Avenue, without any lights on his patrol car, in an area by a drug house known to Parma police. At the time, there was no traffic, but vehicles were parked on the street.

{¶5} Officer Morgan observed two males sitting inside a "darker-colored" Hyundai that was legally parked, without its engine or lights on, which he found "suspicious." He estimated that this vehicle was parked approximately 500 feet west of the aforementioned known drug house, where an individual had overdosed several weeks earlier. Officer Morgan testified that the men could clearly see him and began to "duck in the car" and "recline[] back." Officer Morgan turned on the headlights of his patrol car and then pointed his car's spotlight at the Hyundai. The two men popped their heads up, and Officer Morgan ordered them to raise their hands. The passenger complied, but the driver continued to reach down towards the floorboard. In response to the driver's "fumbling" movements, Officer Morgan drew his service weapon, pointed it at the driver, and then radioed for assistance.

{¶6} A Parma police sergeant arrived to assist Officer Morgan. Together, Officer Morgan and his sergeant approached the driver's side of the vehicle and ordered the driver to exit. The driver was not compliant and continued to reach toward the floorboard. The officers opened the door of the vehicle, physically pulled the driver out, placed him in handcuffs, and secured him in the sergeant's vehicle. The driver was missing one shoe when police removed

him from the vehicle.   Shortly thereafter, the passenger was removed from the vehicle by a third assisting officer.

**{¶7}**   After securing the two men, Officer Morgan returned to the vehicle and recovered a handgun, a shoe, which he later identified as the driver's missing shoe, and a clear plastic bag with several off-white colored rocks from the driver's side floorboard.   Officer Morgan testified that after he opened the driver's door, the gun was clearly visible on the driver's side floorboard.

**{¶8}**   Officer Morgan testified that after calling in the license plate it was determined that the vehicle was owned by a female who was not present and did not have any active warrants.   After transporting the driver to jail, the driver identified himself to Officer Morgan as James.   On cross-examination by James's defense counsel, Officer Morgan testified that he was "in a way" "trusting [his] instincts" and "hunches" when he pulled upon the vehicle that James was sitting in with another man.

**{¶9}**   At the conclusion of Officer Morgan's testimony, the trial court heard brief arguments from counsel and asked the state and the defense to file posthearing briefs on both the suppression issue and James's motion to dismiss.

**{¶10}** In December 2017, the trial court issued a journal entry granting James's motions to dismiss Count 1, HWWUD, and to suppress the evidence resulting from the warrantless search of the legally parked vehicle in which he was sitting.   In the journal entry, the trial court explained its reasoning behind each of these judgments:

> [James's] motion to dismiss Count 1 [HWWUD], felony of the 3rd degree, is hereby granted.  The court dismisses the charge as a violation of [James's] due process rights under the Ohio Constitution.  It is fundamentally unfair to subject an adult to a lifelong disability and felony prosecution from a juvenile delinquency where there exists no evidence that the defendant was counseled or ever placed on notice of such effect when the delinquency was adjudicated.

With regard to all other counts, the defendant's motion to suppress is hereby granted due to lack of probable cause for the search that occurred in this case.

{¶11} At a hearing the same day, the trial court further explained its reasoning behind the suppression ruling on the record:

> The court considered the totality of the evidence. And I just don't believe that officer had enough probable cause to believe that criminal activity was afoot to search the car in the manner that it was.
>
> I don't believe the evidence supported that it was a known drug area based on [Officer Morgan's] testimony that an overdose had occurred somewhere down the street.

{¶12} It is from this judgment that the state now appeals, raising the following two assignments of error for review.

### Assignment of Error One

The trial court erred in granting [James's] motion to suppress.

### Assignment of Error Two

The trial court erred in dismissing the weapons under disability count.

### Motion to Suppress

{¶13} In the first assignment of error, the state argues the trial court erred in suppressing evidence recovered from the search of the vehicle based upon its finding that "probable cause lacked in this case." The state further argues the trial court applied the incorrect standard in ruling on James's suppression motion.

{¶14} Our review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 14, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When considering a motion to dismiss, "'the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility.'" *State v. Grayson*, 8th

Dist. Cuyahoga No. 102057, 2015-Ohio-3229, ¶ 16, quoting *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Banks-Harvey* at ¶ 14, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). We must, however, decide the legal questions independently, without deference to the trial court's decision. *Banks-Harvey* at ¶ 14, citing *Burnside* at ¶ 8.

{¶15} The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

{¶16} Article I, Section 14 of the Ohio Constitution has language almost identical to the Fourth Amendment and affords Ohioans the same protections against unreasonable searches and seizures. *State v. Robinette*, 80 Ohio St.3d 234, 245, 1997-Ohio-343, 685 N.E.2d 762.

{¶17} Warrantless searches are per se unreasonable unless an exception applies. *Curry* at 96, citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One such exception to the warrant rule was articulated by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). In *Terry*, the United States Supreme Court explained that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Id*. at 22.

{¶18} In order to justify a *Terry* investigatory stop, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id*. at 21. "'A "*Terry* stop" is [an] exception to the

warrant requirement that allows an officer to stop and investigate suspicious behavior, even without probable cause to arrest, if the officer has a reasonable suspicion that "criminal activity may be afoot.'''" *Grayson*, 8th Dist. Cuyahoga No. 102057, 2015-Ohio-3229, at _ 20, quoting *Terry* at 30.

{¶19} Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *Grayson*, citing *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). However, reasonable suspicion requires something more than an "'inchoate and unparticularized suspicion or hunch'" *Id.*, quoting *Terry* at 27. "The propriety of an investigative stop must be viewed in light of the totality of the circumstances 'as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *Id.*, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶20} In the instant case, the state argues that James engaged in conduct that provided Officer Morgan with articulable reasonable suspicion to justify a *Terry* stop. The state points to Officer Morgan's testimony that the stop occurred early in the morning in an area near a drug house known to Parma police where an overdose had occurred weeks earlier. The state argues that these pertinent factors, along with James's furtive movements _ continually reaching toward the floorboard upon seeing Officer Morgan _ gave Officer Morgan reasonable suspicion to remove James from the vehicle.

{¶21} The Ohio Supreme Court has held that "'[t]he reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely' in determining whether an investigative stop is warranted." *State v. Bobo*, 37 Ohio St.3d 177, 179, 524 N.E.2d 489 (1988), quoting *United States v. Magda*, 547 F.2d 756, 758 (2d Cir.1976).

**{¶22}** The trial court found, however, that Officer Morgan's testimony that an overdose had occurred in a house down the street from the parked car where James had been sitting did not support Officer Morgan's contention that he stopped James in a "known drug area." We agree with the trial court that the single criminal incident cited by Officer Morgan is insufficient to support the contention that the area around Russell Avenue is a "known drug area."

**{¶23}** In addition, the house where the sole incident of drug overdose occurred was approximately 500 feet away or roughly the length of two football fields from where the car James occupied was legally parked. Such distance does not support Officer Morgan's contention that James was stopped in a "known drug area."

**{¶24}** Further, "furtive movements alone are not sufficient to support reasonable suspicion of criminal activity in high-crime areas." *State v. Christian*, 8th Dist. Cuyahoga Nos. 105601 and 105602, 2018-Ohio-957, citing *State v. Caldwell*, 5th Dist. Richland No. 2011-CA-0024, 2011-Ohio-5429, ¶ 47.

**{¶25}** On this record, there was no proper justification for Officer Morgan to conduct an investigatory stop of the legally parked car James occupied. Officer Morgan was unable to articulate specific facts that would warrant a person of reasonable caution in the belief that the person stopped has committed or is committing a crime. *State v. Uyi Okundaye*, 8th Dist. Cuyahoga No. 94796, 2010-Ohio-6363, ¶ 15.

**{¶26}** Instead, on cross-examination, Officer Morgan testified as follows:

[DEFENSE COUNSEL]: You pulled upon this vehicle and all of a sudden you're alerted because of a drug overdose 500 feet away several weeks ago, although it was legally parked. You focused on that vehicle right away even though you had no specific indication that the occupant or occupants in that vehicle were doing any wrongdoing, criminal mischief or activity, is that correct?

[OFFICER MORGAN]: Maybe I'm misunderstanding your question.

[DEFENSE COUNSEL]: Basically you're trusting your instincts, trusting your hunches, isn't that correct?

[OFFICER MORGAN]: In a way.

{¶27} As previously stated, reasonable suspicion requires something more than an "inchoate and unparticularized suspicion or hunch." *Terry,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶28} Here, the car was legally parked. It was subsequently determined that neither occupants owned the legally parked vehicle. It was also subsequently determined that the owner of the vehicle was a female, who had no outstanding warrants. In addition, in its brief in opposition to the motion to suppress, the state indicated that James and the passenger were waiting for some girls to come out of the house. On the face, nothing here lends itself to the conclusion that criminal activity was afoot.

{¶29} In accordance with the foregoing, we conclude there was no reasonable, articulable suspicion that criminal activity was afoot to justify an investigatory stop and search of the car James occupied. Therefore, the trial court properly suppressed the evidence obtained from the vehicle. Accordingly, the first assignment of error is overruled.

{¶30} Our disposition of the first assignment of error renders the remaining assignment of error moot. App.R. 12(A)(1)(c).

{¶31} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

LARRY A. JONES, SR., J., CONCURS;
FRANK D. CELEBREZZE, JR., J., DISSENTS (SEE SEPARATE DISSENTING OPINION).

FRANK D. CELEBREZZE, JR., J., DISSENTING:

**{¶32}** I must respectfully dissent from the majority's conclusion that Officer Morgan lacked a reasonable, articulable suspicion that criminal activity was afoot in order to justify a *Terry* stop. In my view, Officer Morgan had a reasonable, articulable suspicion, when considering the totality of the circumstances, that James was involved in or about to be involved in criminal activity to justify the investigatory stop.

**{¶33}** As an initial matter, I would find that the record supports the state's argument that the trial court "applied the wrong standard when it found no probable cause for the search" and that only a reasonable articulable suspicion is required to justify a *Terry* stop. Appellant's brief at 7. The majority acknowledges that a *Terry* stop is an exception to the warrant requirement that allows an officer to investigate suspicious behavior, even without probable cause, if the officer has a reasonable articulable suspicion that criminal activity is afoot. *See State v. Grayson*, 8th Dist. Cuyahoga No. 102057, 2015-Ohio-3229, ¶ 20, citing *Terry* at 30. In ruling on James's motion to suppress, however, the trial court stated, "[James's] motion to suppress is hereby granted due to *lack of probable cause* for the search that occurred in this case. The court considered the totality of the evidence. And I just don't believe that the officer had enough *probable cause* to believe that a criminal activity was afoot to search the car in the manner that it was." (Emphasis added.) (Tr. 84.)

**{¶34}** "Reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Grayson* at ¶ 20, citing *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). "Reasonable suspicion entails some minimal level of objective justification for making a stop — that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but *less than the level of suspicion required for probable cause*." (Emphasis added.) *State v. Jones*, 70 Ohio App.3d 554, 556-557, 591 N.E.2d 810 (2d Dist.1990), citing *Terry* at 27.

{¶35} Nevertheless, I respectfully disagree with the majority's conclusion that Officer Morgan did not have a reasonable, articulable suspicion that criminal activity was afoot to justify the *Terry* stop. First, as the majority recognizes, the trial court concluded that Officer Morgan's testimony that an overdose had occurred in a known drug house down the street from the parked vehicle did not support Officer Morgan's assertion that the vehicle was parked in a known drug area. The majority also concludes that Officer Morgan's reference to the overdose incident is insufficient to support his assertion that the area on Russell Avenue where the vehicle was parked is a known drug area.

{¶36} In my view, both the trial court and the majority presume that the sole basis upon which Officer Morgan asserted that the area was a "known drug area" was the fact that an overdose had occurred down the street from the parked vehicle. I would find that this presumption is not supported by the record.

{¶37} Officer Morgan testified that he knew the area as a "drug area," the neighborhood was "known for drug activity," and that there was a house on Russell Avenue that was known to the police as a drug house. Accordingly, Officer Morgan's assertion that the area was a "known drug area" was based on (1) the drug activity that takes place in the particular neighborhood, (2) the known drug house on Russell Avenue, and (3) the overdose that took place in the known drug house. Officer Morgan's assertion was not, as the trial court and the majority concluded, based solely on the fact that an overdose had occurred on the same street that James's vehicle was parked.

{¶38} Second, in my view, the majority fails to take James's furtive and evasive movements inside the vehicle, which Officer Morgan observed, into consideration in determining whether he had a reasonable, articulable suspicion that criminal activity was afoot, such that the *Terry* stop was justified. Although the majority cites the proposition that furtive movements alone are insufficient to support a reasonable, articulable suspicion that criminal activity is afoot, the majority does not address James's conduct of "ducking," failing to comply with Officer Morgan's commands, and continually reaching down towards the vehicle's floorboard, where his hands were out of Officer Morgan's sight. Rather, the majority focuses primarily on whether the *Terry* stop was justified based on Officer Morgan's assertion that the vehicle was parked in a known drug area.

{¶39} Third, I would find that Officer Morgan attempted to initiate a consensual encounter, under which the Fourth Amendment was not implicated, when he first came across the vehicle parked on Russell Avenue.

> Not every encounter, however, between the police and an individual involves the detention of the individual. "An officer may approach an individual in a street or other public place for the purpose of a consensual encounter. A consensual encounter is not a seizure, so no Fourth Amendment rights are invoked. The individual must be free to terminate the consensual encounter or decline the officer's request." *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Moreover, a seizure has not occurred when an officer approaches a vehicle and questions its occupants. *State v. Boys*, 128 Ohio App.3d 640, 642, 716 N.E.2d 273 (1st Dist.1998), citing *State v. Johnston*, 85 Ohio App.3d 475, 620 N.E.2d 128 (4th Dist.1993).

*State v. Alim*, 2017-Ohio-8868, 100 N.E.3d 1119, ¶ 24 (8th Dist.).

**{¶40}** In this case, Officer Morgan testified on redirect examination that he would have approached the vehicle even if James and the passenger had not been ducking and moving around because "[i]t's 3:40 in the morning.  I don't know who they are[.]"  (Tr. 58-59.)  The following exchange took place during recross-examination of Officer Morgan:

> [Defense Counsel]:   So it's 3:40 a.m. in the morning in Parma, Ohio, and you're going to approach anybody at that time of night, correct?

> [Officer Morgan]:   In that particular circumstance, yes.

(Tr. 60.)

**{¶41}** Although Officer Morgan testified that his attention was initially drawn to the vehicle based on the vehicle's proximity, approximately 500 feet, to a known drug house, the record does not reflect that the vehicle's proximity to the drug house was the sole basis upon which he conducted a *Terry* stop.  Rather, the record reflects that Officer Morgan's attempt to initiate a consensual encounter evolved into a *Terry* stop based on James's evasive and furtive movements inside the vehicle, which Officer Morgan observed.  Before he was able to approach the vehicle, initiate the consensual encounter, and question James, additional facts became available to Officer Morgan, based upon which he believed that criminal activity was, in fact, afoot.

{¶42} Fourth, in my view, Officer Morgan's belief that criminal activity was afoot, based on the additional facts that became available and his observations of James and the passenger inside the vehicle, was reasonable. Regarding these additional facts and observations, Officer Morgan testified that "when there was a clear observation that [James and the passenger] could see me and I could see them, both of them began to duck in the car." (Tr. 39.) Officer Morgan described the "ducking" he observed as "like a reclined back kind of, oh, crap, type thing." (Tr. 39.)

{¶43} After observing the "ducking," Officer Morgan turned on his headlights and pointed his vehicle's spotlight at the parked vehicle. At this point, he explained that both James and the passenger "popped their heads up" and Officer Morgan ordered the males to show him their hands. (Tr. 40.)

{¶44} He opined that the behavior of James and the passenger inside the vehicle was "suspicious." (Tr. 40.) Officer Morgan explained why the males were suspicious to him: "it was 3:40 in the morning, a dark street, a known drug area for me with this drug house, particularly within weeks had people that had overdosed in that house. So yeah, at that time of night, that particular situation, yeah, it startled even me." (Tr. 41.)

**{¶45}** Officer Morgan testified that the passenger complied with his order, but James did not. Rather, James "continued to reach down towards the floorboard of the vehicle, which kind of shielded his body from me altogether. * * * As he was doing that, I continued to order him to show me his hands. Due to the nature of his fumbling around, I did draw my service weapon and point it at him." (Tr. 40.) Officer Morgan testified that James repeatedly failed to comply with his commands. James kept dropping his hands down to the vehicle's floorboard, where they were out of Officer Morgan's sight. After Officer Morgan radioed for backup, and a sergeant arrived at the scene, James did not comply with the officers' orders for him to exit the vehicle. Rather than showing his hands or exiting the vehicle, James continued to reach down towards the vehicle's floorboard.

**{¶46}** On cross-examination, Officer Morgan testified that he ordered James to exit the vehicle based on the furtive movements he observed after encountering the vehicle — not because the vehicle was parked in a known drug area. (Tr. 56.) Regarding the "ducking" he observed, Officer Morgan opined, "if you're ducking in a car, you're obviously making some sort of attempt to avoid me." (Tr. 59.) He explained during redirect examination, "if I saw somebody in a vehicle at any point at 3:40 in the morning like that, and upon putting my lights on them, they ducked from the inside of that vehicle, I would have stopped them as well." (Tr. 59.)

**{¶47}** The following exchange took place during recross-examination:

[Defense counsel]: That's your indication of any illegal wrongdoing or criminal activity, a house 500 feet away someone [overdosed] several weeks before that. That's how you focused on [James] in that vehicle, is that correct?

[Officer Morgan]: That's what *initially got my attention to the vehicle*.

(Emphasis added.) (Tr. 63.)

**{¶48}** Accordingly, the record reflects that the vehicle's presence in the known drug area was not the sole basis upon which Officer Morgan believed that criminal activity was afoot. Rather, the vehicle's presence in the known drug area, coupled with the time of day, originally drew his attention to the vehicle. Thereafter, his observations of James's furtive and evasive movements inside the vehicle, coupled with the vehicle's presence in a known drug area and the time of day, led him to believe that criminal activity was afoot.

**{¶49}** Officer Morgan was unable to call in the vehicle's license plate number based on the additional facts that became available and his observations of James's furtive and evasive movements.[1] He explained that "as I'm waiting for all that information back [regarding the vehicle and the license plate], I'm dealing with the parties that are inside of the vehicle." (Tr. 63.)

**{¶50}** For all of the foregoing reasons, I would find that Officer Morgan had a reasonable, articulable suspicion that James was involved in or about to be involved in criminal activity, based on the totality of the circumstances — (1) 3:40 a.m., (2) James was parked in an area that was known to Officer Morgan as a drug area, (3) James was parked approximately 500 feet from a house that was known to police as a drug house, in which an overdose had recently occurred, (4) James and the passenger both "ducked" when they saw Officer Morgan, and (5) James did not comply with Officer Morgan's commands to raise his hands, and continued to reach down towards the vehicle's floorboard, causing Officer Morgan, a seven-year veteran of the Parma Police Department, to be "startled." (Tr. 41.)

---

[1] Officer Morgan initially testified that he called in the vehicle's license plate number. (Tr. 51.) However, he subsequently explained that upon approaching the vehicle, he was not able to call in the license plate and determine the identity of the occupants inside the vehicle. (Tr. 62, 64.)

{¶51} Under these circumstances, I would find that the investigatory *Terry* stop was justified. Accordingly, I would reverse the trial court's judgment granting James's motion to suppress, and address the state's second assignment of error regarding the trial court's judgment dismissing the having weapons while under disability count.