[Cite as *State v. Alim*, 2017-Ohio-8868.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   105164

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## IBRAHAM ALIM

DEFENDANT-APPELLEE

### JUDGMENT:
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-606319-D

**BEFORE:**   Boyle, P.J., S. Gallagher, J., and Jones, J.

**RELEASED AND JOURNALIZED:**   December 7, 2017

**ATTORNEYS FOR APPELLANT**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Mary M. Dyczek
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Mark Stanton
Cuyahoga County Public Defender
BY:   Erika B. Cunliffe
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

**{¶1}** Plaintiff-appellant, state of Ohio, appeals from a judgment granting the motion to suppress of defendant-appellee, Ibraham Alim. The state raises one assignment of error for our review:

> The trial court erred when granting the motion to suppress evidence and statements.

**{¶2}** Finding merit to the state's appeal, we reverse and remand.

## I. Procedural History and Factual Background

**{¶3}** The Cuyahoga County Grand Jury indicted Alim on six counts: trafficking and possession of heroin in violation of R.C. 2925.03(A)(2), a third-degree felony, and R.C. 2925.11(A), a fourth-degree felony; trafficking of marijuana in violation of R.C. 2925.03(A)(2), a fourth-degree felony; possession of fentanyl in violation of R.C. 2925.22(A), a fifth-degree felony; possession of cocaine in violation of R.C. 2925.11(A), a fifth-degree felony; and possessing criminal tools in violation of R.C. 2923.24(A), a fifth-degree felony. All of the counts carried forfeiture specifications of various property, and two of the counts also carried a schoolyard specification. Alim pleaded not guilty to all charges.

**{¶4}** Prior to trial, Alim moved to suppress the evidence against him. The state opposed his motion and presented the following evidence at the hearing on his motion.[1]

---

[1]Before the motion to suppress hearing, the state moved to amend the indictment to remove the schoolyard specifications from Counts 1 and 3, which made the two trafficking counts lesser-degree felonies; they were third- and fourth-degree felonies, and they became fourth- and

**{¶5}** Bedford Heights Police Officer Lee Ester testified that on May 10, 2016, at around 2:00 or 2:30 p.m., he was on general patrol when he received a call from dispatch stating that there was a call regarding drug activity in the area of Perkins Plaza, which he explained was a "strip mall" on Aurora Road in Bedford Heights. The 911 call was played in court. The anonymous caller told the dispatcher that there were two people in a black older "Chevy Blazer" in the parking lot by the "Gateway" (which is a bar in the Perkins Plaza) selling drugs out of the vehicle. The caller stated that one of the men was wearing a white T-shirt. The caller further stated that the Blazer only had a "temporary tag" on the back of the vehicle. When asked by the dispatcher, "how do you know they were selling drugs," the caller responded that he heard one of the men in the Blazer ask a person who was walking by, "what do you need?"

**{¶6}** Officer Ester testified that when he drove to the plaza, he was in full uniform and in a standard "marked" police cruiser. As he was driving past the plaza on Aurora Road, he began to look for a black SUV in the parking lot. When he saw one, he pulled into the parking space directly behind it because it was an open parking spot. Officer Ester said that he immediately noticed the vehicle's temporary tag.

**{¶7}** Officer Ester explained that when he pulled behind the black SUV, he did not "effectuate a traffic stop." He did not have his lights and sirens activated, nor did he have his gun drawn when he approached two males who were standing outside of the vehicle on the driver's side of the car. The driver's door of the SUV was open, and the

---

fifth-degree felonies.

two men were talking to another male who was sitting in the driver's seat of the vehicle. In addition to the male in the driver's seat (Alim), there were two other males in the car: one in the passenger seat (codefendant Devon Edwards[2]) and one sitting behind the driver. Officer Ester said that the driver and the passenger in the vehicle were both wearing white T-shirts.

{¶8} Officer Ester testified that he could not hear what anyone was saying as he approached, but when he got to the driver's door, he said that he could "smell marijuana in the area." Specifically, Officer Ester stated that when he "got closer to the two males standing outside the vehicle," he could smell marijuana when he was near "the end of the door" while the two males were "more by the body of the car and the inside of the door." Officer Ester said that he was able to discern that the marijuana smell was coming from inside the vehicle.

{¶9} Once Officer Ester smelled the marijuana, he asked for identification from the driver of the vehicle and the two occupants standing outside of the vehicle. At that point, Officer Ester called dispatch to report the males' names, social security numbers, and dates of birth. He learned that the two males standing outside of the black SUV had outstanding warrants from other jurisdictions. Officer Ester handcuffed them and leaned them up against the front of his police cruiser.

{¶10} Officer Ester waited for other officers to arrive before removing the

---

[2]The trial court held a joint hearing on Alim's and Edwards's motions to suppress. The state separately appealed the trial court's granting of Edwards's motion. *See State v. Edwards*, 8th Dist. Cuyahoga No. 105163.

occupants of the vehicle. When Officer Jeremy Blackstone arrived to assist, Officer Ester asked Officer Blackstone to check on the passenger side of the vehicle because he said that he could not see anything on that side of the car.

{¶11} On cross-examination, Officer Ester agreed that he must have smelled raw marijuana because they did not see anyone smoking marijuana, nor did they find "burnt joints" in the vehicle. He further agreed that the marijuana they found in the vehicle was contained inside plastic bags.

{¶12} Officer Ester also agreed that as he got out of his car and approached the driver's door, no one was free to leave. He further agreed that what he found in the parking lot was inconsistent with what the anonymous caller reported, which was that there were only two males, with one of them wearing a white T-shirt.

{¶13} Officer Blackstone testified that when he arrived at the scene, Officer Ester was on the driver's side of the vehicle, standing near the two men who were outside of the vehicle. Officer Blackstone said that Officer Ester signaled for him to go to the passenger's side of the car. When he did, the passenger door was open about "a foot," and he saw that the passenger was bent over with his hands "underneath the seat, either grabbing something or throwing something." Officer Blackstone stated that "the door was ajar and I was concerned for officer safety [because of] what he had just thrown underneath the seat." When Officer Blackstone reached the passenger, the passenger sat up and did not have anything in his hands. Officer Blackstone asked him what he placed under the seat. The passenger replied "nothing" at first and then "changed his mind"

and stated that it was his cell phone.  But when the passenger retrieved his cell phone from the floor, it was near his feet not under the seat.

{¶14} Officer Blackstone testified that when he reached the passenger side of the vehicle, he also observed that there was "a strong odor of a marijuana-type substance coming from the vehicle."  Officer Blackstone stated that he did not know if it was "burnt" or "raw" marijuana because he did not know the difference between the two, but he knew what marijuana smelled like from his "job."

{¶15} Officer Blackstone testified that he removed the passenger from the car so that he could look under the seat.  He said that he was concerned for officer safety and he also knew that the nature of the anonymous call was about drugs.  He searched the passenger and found $731 in his front pants pocket.  Officer Blackstone then looked under the passenger seat and found a scale.

{¶16} Officer Blackstone was wearing a body camera when he arrived at the scene.  The recording was played to the trial court.  The video shows that when Officer Blackstone arrived, Officer Ester motioned for him to go to the passenger side of the vehicle.  Once Officer Blackstone reached the passenger side, he said to the passenger, "What did you stuff under there?"  The passenger responded, "I didn't stuff nothing." The passenger then states, "just my phone."  Officer Blackstone then asked the passenger two times for identification.  Officer Blackstone then stated, "it reeks of marijuana in here."  The passenger pointed to his left and responded, "they were just smoking right there."  Officer Blackstone then asked the passenger if there were any

weapons or drugs in the car, which he responded "no." Officer Blackstone called the passenger's name and social security number in to dispatch. He then removed the passenger from the car and searched him, finding the cash. The video then shows Officer Blackstone searching under the passenger seat and finding a scale.

{¶17} After Officer Blackstone found the scale, the officers removed the other occupants from the vehicle and searched it. The officers found multiple drugs in the car and under the car (on the ground below the passenger side of the car) as well as drug paraphernalia in the car.

{¶18} The trial court granted Alim's motion to suppress. It is from this judgment that the state appeals. In its sole assignment of error, the state argues that the trial court erred when it granted Alim's motion to suppress because the initial encounter between the occupants of the vehicle and Officer Ester was consensual and that once officers Ester and Blackstone smelled marijuana, they had sufficient justification to search the occupants and the vehicle.

## II. Standard of Review

{¶19} A motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In *Burnside*, the Ohio Supreme Court explained this standard of review as follows:

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437

N.E.2d 583 (1982).

Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 ([4th Dist.] 1997).

## III. Fourth Amendment

{¶20} The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Ohio Constitution, Article I, Section 14, is nearly identical to its federal counterpart. *State v. Kinney*, 83 Ohio St.3d 85, 87, 698 N.E.2d 49 (1998).

{¶21} For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant. *See Katz v. United States*, 389 U.S. 347, 350, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). This requires a two-step analysis. First, there must be probable cause. If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies. If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed. *Mapp v. Ohio*, 367 U.S. 643, 657, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

{¶22} Probable cause for a search is present when the totality of the circumstances make it fairly probable that particularly described evidence of a crime will be found. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Probable

cause requires a fair probability of criminal activity, not a showing by preponderance of the evidence or beyond a reasonable doubt. *Id*. at 235. Moreover, in assessing probable cause or reasonable suspicion, a court must consider the facts in their totality. *State v. Gantz*, 106 Ohio App.3d 27, 35, 665 N.E.2d 239 (10th Dist.1995). Police officers may draw inferences based upon their experience and training in order to decide whether probable cause exists and, of course, those inferences may not be obvious to an untrained person. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

{¶23} Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*. We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991). The officer must have more than an inchoate hunch or suspicion to justify an investigatory stop. *Heard* at ¶ 14.

{¶24} Not every encounter, however, between the police and an individual involves the detention of the individual. "An officer may approach an individual in a

street or other public place for the purpose of a consensual encounter. A consensual encounter is not a seizure, so no Fourth Amendment rights are invoked. The individual must be free to terminate the consensual encounter or decline the officer's request." *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Moreover, a seizure has not occurred when an officer approaches a vehicle and questions its occupants. *State v. Boys*, 128 Ohio App.3d 640, 642, 716 N.E.2d 273 (1st Dist.1998), citing *State v. Johnston*, 85 Ohio App.3d 475, 620 N.E.2d 128 (4th Dist.1993).

{¶25} In this case, Officer Ester pulled into an open parking spot behind Alim's black SUV in the parking lot of a retail plaza and parked his cruiser. It was the middle of the afternoon. Officer Ester was in a marked police car, but he had not activated his lights or sirens. He approached the vehicle without his gun drawn. At this point, the encounter was consensual and did not implicate the Fourth Amendment. The fact that Officer Ester parked behind the SUV and walked up to it because of an anonymous tip is irrelevant at this point. Further, just because Officer Ester agreed on cross-examination that the occupants were not free to leave once he pulled behind them does not change this analysis. The fact is, Officer Ester had not, "'by means of physical force or show of authority,'" restrained anyone's liberty at that point. *Bostick* at 439, quoting *Terry*.

{¶26} The encounter, however, quickly escalated into reasonable suspicion for an investigative detention and probable cause for the search of the vehicle pursuant to the "automobile exception" once Officer Ester smelled marijuana. Officer Ester testified

that as he approached the vehicle, he smelled marijuana. He said that when he reached the driver's door, he could discern that the smell of marijuana was coming from inside the vehicle.

{¶27} "[U]nder the automobile exception to the warrant requirement, the police may search a motor vehicle without a warrant if they have probable cause to believe that the vehicle contains contraband." *State v. Battle*, 10th Dist. Franklin No. 10AP-1132, 2011-Ohio-6661, ¶ 33. Courts define probable cause in the context of an automobile search as "'a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction.'" *State v. Parrish*, 10th Dist. Franklin No. 01AP-832, 2002-Ohio-3275, ¶ 27, quoting *State v. Kessler*, 53 Ohio St.2d 204, 373 N.E.2d 1252 (1978). Accordingly, "[t]he determination of probable cause is fact-dependent and turns on what the officer knew at the time he made the stop and/or search." *Battle* at ¶ 34.

{¶28} It is well established that

> the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement. There need be no other tangible evidence to justify a warrantless search of a vehicle.

*State v. Moore*, 90 Ohio St.3d 47, 48, 734 N.E.2d 804 (2000); *see also State v. Williams*, 8th Dist. Cuyahoga Nos. 92009 and 92010, 2009-Ohio-5553, ¶ 26 (the "smell of marijuana emanating from the vehicle justified a search of the vehicle without a warrant based upon the 'plain smell doctrine'"); *State v. Byers*, 8th Dist. Cuyahoga No. 94922, 2011-Ohio-342, ¶ 16 (the search was supported by probable cause when the police

officers discovered that the occupants of the vehicle had been smoking marijuana); *State v. Hopper*, 8th Dist. Cuyahoga Nos. 91269 and 91327, 2009-Ohio-2711, ¶ 20 ("the smell of marijuana gives rise to a reasonable suspicion that the person stopped is engaged in criminal activity").

{¶29} The trial court in this case noted that Officer Ester could not tell if the smell of marijuana was raw or burnt and that Officer Blackstone admitted that he does not know the difference between the two. But notably, the trial court did not make a finding that the officer's testimony regarding the marijuana was incredible. It is important to note that on appeal, Alim does not even mention anything about marijuana in his brief. Rather, Alim focuses his arguments on the fact that the officers' actions were unjustified because they failed to corroborate the anonymous tip. And although both Alim and Edwards argued at the hearing that the officers' testimony that they smelled marijuana was not credible, Officer Blackstone's body-camera video establishes that almost immediately after asking Edwards what he "stuffed under the seat," he said to Edwards, "it reeks of marijuana in here." At that point, Edwards admitted that "they were just smoking right there."

{¶30} Accordingly, we conclude that after smelling the marijuana in the vehicle, the officers had probable cause to justify their search of the defendants and the black SUV.

{¶31} We note that the state also argues that Officer Blackstone's search was justified because he saw the passenger make a furtive movement under his seat. But we

do not need to address that because Officer Blackstone stated almost immediately upon arriving at the passenger's window, before he did anything else, that the vehicle "reeked" of marijuana — a fact that the passenger admitted was true. Thus, even without the furtive movement, the officers had probable cause to search the vehicle and the occupants in the vehicle.

**{¶32}** Accordingly, the state's arguments are well taken and its sole assignment of error is sustained.

**{¶33}** Judgment reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
LARRY A. JONES, SR., J., CONCUR