[Cite as *State v. Taylor*, 2020-Ohio-5079.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                          No. 108322

    v.                                  :

GEORGE R. TAYLOR,                       :

    Defendant-Appellant.        :

---

### EN BANC DECISION AND JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 29, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-631409-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Michael A. Barth and Tasha L. Forchione, Assistant Prosecuting Attorneys, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Paul Kuzmins, Assistant Public Defender, *for appellant.*

EILEEN T. GALLAGHER, A.J.:

{¶ 1} Pursuant to App.R. 26, Loc.App.R. 26, and *McFadden v. Cleveland State Univ.*, 120 Ohio St.3d 54, 2008-Ohio-4914, 896 N.E.2d 672, the en banc court determined that a conflict existed between (1) the original panel decision in *State v.*

*Taylor*, 8th Dist. Cuyahoga No. 108322, 2020-Ohio-490, and (2) our prior decision in *State v. Franklin*, 8th Dist. Cuyahoga No. 99806, 2014-Ohio-1422.

{¶ 2} On March 18, 2019, defendant-appellant, George R. Taylor, filed a notice of appeal, challenging his convictions following a no contest plea. Taylor raised the following assignments of error for review:

> 1. Reasonable suspicion of criminal activity does not exist when a car is operated with a frame that overlaps slightly with a portion of the car's rear license plate.
>
> 2. Officers exceeded the scope of a plain smell probable cause search for marijuana without justification.

{¶ 3} On February 13, 2020, the original panel affirmed in part, reversed in part, and remanded for further proceedings. The panel unanimously upheld the initial traffic stop of Taylor's vehicle and concluded that the arresting officers had sufficient probable cause for the search of the passenger compartment of the vehicle, where they discovered marijuana and ammunition in the center console. *Taylor* at ¶ 8-18. However, a majority of the panel determined that the officers exceeded the scope of their probable cause when they continued their search and removed a dashboard panel, where they discovered a firearm. *Id* at ¶ 19. Accordingly, the majority found "the trial court erred in denying [Taylor's] motion to suppress as to the gun found in the dashboard panel." *Id.*

{¶ 4} Based on the perceived conflict between the panel opinion and this court's prior decision in *Franklin*, 8th Dist. Cuyahoga No. 99806, 2014-Ohio-1422, this court has deemed it necessary to hear the matter en banc to clarify this district's

black-letter law. To secure and maintain uniformity of decisions within the district, we vacate the panel decision issued in *Taylor*, 8th Dist. Cuyahoga No. 108322, 2020-Ohio-490, and issue this decision as the final decision in this appeal.

{¶ 5} The sole issue to be considered by the en banc court has been framed as follows:

> When police detect an odor of marijuana from a vehicle during a lawful traffic stop and find marijuana in the passenger compartment of the vehicle, do they have probable cause to search behind a visibly displaced panel of the dashboard/center console?

{¶ 6} This opinion is divided into two parts: (1) the decision of the en banc court and (2) the decision of the merit panel. The en banc decision is limited to the issue raised in Taylor's second assignment of error regarding whether the arresting officers' search of Taylor's vehicle exceeded the scope of probable cause.

## I. Decision of the En Banc Court

{¶ 7} On February 24, 2020, plaintiff-appellee, the state of Ohio, filed a motion for en banc consideration, arguing "that with the release of *Taylor*, there are now conflicting opinions in this district regarding whether if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents."

{¶ 8} In *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the United States Supreme Court held that the automobile exception to the Fourth Amendment's warrant requirement permits the warrantless searches of containers that could contain items for which officers have probable cause to search. In *Ross*, the Supreme Court examined whether the search of a brown bag found in

the trunk of a vehicle was reasonable within the meaning of the Fourth Amendment. The court held that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825.

{¶ 9} Nearly two decades later, the court revisited warrantless searches of containers under the automobile exception. In *Wyoming v. Houghton*, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), during a traffic stop, an officer observed a syringe in the driver's shirt pocket, so he searched the car and the purse of a passenger and found more drug paraphernalia in the purse. Although the Wyoming Supreme Court suppressed the evidence, the United States Supreme Court reversed, explaining that

> neither *Ross* itself nor the historical evidence it relied upon admits of a distinction among packages or containers based on ownership. When there is probable cause to search for contraband in a car, it is reasonable for police officers * * * to examine packages and containers without a showing of individualized probable cause for each one.

*Id.* at 302.

{¶ 10} In support of its en banc position, the state directs this court to our prior decision in *Franklin*, 8th Dist. Cuyahoga No. 99806, 2014-Ohio-1422. In *Franklin*, this court reiterated the well-established principle that

> the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement. There need be no other tangible evidence to justify a warrantless search of a vehicle.

*Id.* at ¶ 18, citing *State v. Moore*, 90 Ohio St.3d 47, 48, 734 N.E.2d 804 (2000).

{¶ 11} Based on this principle, Franklin's vehicle was searched following a valid traffic stop when the officer detected a strong odor of burnt marijuana emanating from the vehicle. The officer testified that once he entered Franklin's vehicle he immediately noticed, in addition to the smell of burnt marijuana, contraband indicative of drug trafficking, including a digital scale and plastic baggies scattered underneath the passenger seat. On examination of the center console, the officer noticed that the molding was displaced. Believing, based on his training and experience, that the console may be concealing illegal contraband, the officer lifted the displaced molding and observed a baggie of marijuana. Based on the discovery of the marijuana, the officer continued his search and removed the entire molding, where he discovered a large bag of heroin and a firearm.

{¶ 12} In challenging the scope of the officer's search, Franklin relied on the Ohio Supreme Court's decision in *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985. In *Farris,* police officers searched the defendant's entire vehicle, including the trunk, after detecting the odor of marijuana in the passenger compartment of the vehicle. They then arrested the defendant. The court opined that "[a] trunk and a passenger compartment of an automobile are subject to different standards of probable cause to conduct searches." *Id.* at ¶ 51. Consequently, the court held, "[t]he odor of burnt marijuana in the passenger compartment of a vehicle does not, standing alone, establish probable cause for a warrantless search of the trunk of the vehicle." *Id.* at ¶ 52.

**{¶ 13}** Relying on *Farris*, Franklin argued that the officer's decision to remove the center console molding in his vehicle was overly intrusive and far exceeded a search of the passenger compartment. Franklin asserted that the "dismantling" of his center console was more analogous to the search of a trunk and, therefore required additional factors beyond the odor of burnt marijuana to justify the warrantless search. Taylor has raised an analogous argument in the present appeal.

**{¶ 14}** After careful consideration, this court rejected Franklin's position that the officer's decision to remove the center console molding in his vehicle was overly intrusive and far exceeded a search of the passenger compartment, stating:

> Initially, we note that *Farris* appears to be inapplicable to the case at hand. *See State v. Chase*, 2d Dist. Montgomery No. 25322, 2013-Ohio-2346, fn. 2 (noting that a discussion of *Farris* was not necessary where the search of defendant's vehicle did not extend to the trunk). Here, the challenged conduct did not involve the search of appellant's trunk, and appellant has presented no case law to support his position that *Farris* would apply to searches conducted within the interior of the vehicle at issue.

> Moreover, even if this court were to accept appellant's position that the "dismantling" of his center console was analogous to the search of a trunk, we find *Farris* to be distinguishable from the case at bar. Unlike the facts presented in *Farris*, the odor of burnt marijuana was not the sole basis of the officers' probable cause to search appellant's entire vehicle. Here, [the] officers observed additional indicia of drug activity, including an "extremely large bundle of money in [appellant's] pocket," a digital scale, and baggies commonly used to distribute drugs. As such, we find that this case is similar to cases where other evidence, in addition to the odor of burnt marijuana, established probable cause to allow the officer to search the entire vehicle, including the trunk. *See, e.g., State v. Greenwood*, 2d Dist. Montgomery No. 19820, 2004-Ohio-2737 (officer observed marijuana on the passenger seat and floorboard); *State v. Whatley*, 5th Dist. Licking No. 10-CA-93, 2011-

Ohio-2297 (officer found marijuana in the passenger compartment of the car in plain view, was given a false name by defendant, and the driver made an attempt to get into the trunk as she was walking toward the officer's cruiser); and *State v. Griffith*, 2d Dist. Montgomery No. 24275, 2011-Ohio-4476 (officer found marijuana in plain view in the passenger compartment, defendant was in a parking lot where high occurrences of drug activity were known to occur, and defendant drove evasively from officer).

Under the totality of the circumstances, we find that the search of appellant's vehicle was supported by sufficient probable cause and did not violate appellant's constitutional rights. Thus, the trial court did not err in denying appellant's motion to suppress.

*Franklin* at ¶ 23-25.

{¶ 15} Upon en banc consideration, we uphold the conclusion reached in *Franklin*, and reiterate that the heightened standard set forth in *Farris* does not apply to searches conducted within the passenger compartment of a vehicle. Consistent with the confines of *Farris*, we hold that when an officer detects an odor of marijuana from a vehicle during a lawful traffic stop, the officer has probable cause to conduct a warrantless search of the interior of the vehicle and its contents that may conceal the object of the search, including behind a visibly displaced panel that is located within the vehicle's passenger compartment. If, during the search, the officer discovers marijuana or other indicia of criminal activity in the vehicle, the officer possesses additional probable cause to search other areas of the vehicle and its contents that could contain items for which officers have probable cause to search. *See State v. Vega*, 154 Ohio St.3d 569, 2018-Ohio-4002, 116 N.E.3d 1262, ¶ 20 ("After finding marijuana and other drug paraphernalia in [the defendant]'s car, [the officer] had probable cause to open the envelopes because it was reasonable

to believe that they could contain marijuana."); *State v. Beavers*, 8th Dist. Cuyahoga No. 88513, 2007-Ohio-2915, ¶ 12 (discovery of marijuana in the passenger compartment gave officer probable cause to believe that the vehicle contained contraband; thus, officer was entitled to search the entire vehicle, including the trunk and its contents).

---

EILEEN T. GALLAGHER, ADMINISTRATIVE JUDGE

SEAN C. GALLAGHER, FRANK D. CELEBREZZE, JR., KATHLEEN ANN KEOUGH, MICHELLE J. SHEEHAN, and MARY J. BOYLE, JJ., CONCUR;

RAYMOND C. HEADEN, J., CONCURS WITH SEPARATE OPINION;

ANITA LASTER MAYS, J., DISSENTS WITH SEPARATE OPINION, with LARRY A. JONES, SR., EILEEN A. GALLAGHER, MARY EILEEN KILBANE, and PATRICIA ANN BLACKMON, JJ.

RAYMOND C. HEADEN, J., CONCURRING WITH SEPARATE OPINION:

{¶ 16} I fully concur with the majority opinion. I write separately to emphasize the importance of the visibly displaced dashboard panel. While not explicitly articulated in the majority opinion, I believe that the rationale for our holding is based in part on the notion that a visibly displaced dashboard panel, when observed in the context of a traffic stop where the officer conducting the stop has detected an odor of marijuana and observed indicia of drug activity, was likely displaced in an attempt to hide additional indicia of criminal activity. I would stress that our holding here should not be interpreted to give an officer conducting a traffic stop license to search behind a dashboard panel or console in the absence of

evidence that the panel was displaced in attempt to conceal the object of the search. With this emphasis in mind, I respectfully concur.

ANITA LASTER MAYS, J., DISSENTS WITH SEPARATE OPINION:

{¶ 17} I would find that this case can be distinguished from this court's prior decision in *State v. Franklin*, 8th Dist. Cuyahoga No. 99806, 2014-Ohio-1422, and would determine that en banc consideration pursuant to App.R. 26 and Loc.App.R. 26 is unwarranted.

{¶ 18} Before addressing the en banc question, Westlake Police Patrolman Nicholas Ribich ("Officer Ribich") testified that on July 14, 2018, he was behind Taylor's car, traveling westbound on Interstate 90. According to Officer Ribich, due to the position of the license plate holder of the vehicle, the validation and expiration stickers of the plate were not visible, contrary to Westlake Ordinance 335.09 and R.C. 4503.21. Because he could not see the two required stickers, he decided to make a traffic stop of the vehicle. Officer Ribich on cross-examination acknowledged that he could see that the two stickers were the color of the current year's validation stickers, but they were partially covered. (Tr. 37- 38.) Officer Ribich ran the license plate number through his vehicle computer and learned that the registration was valid and up-to-date. (Tr. 39.) With no additional traffic violations, this de minimis violation was used as a pretextual stop.

{¶ 19} Turning to the en banc issue, in *Franklin*, Cleveland Police Officer Myers ("Officer Myers") recognized a white vehicle from a previous drug arrest in

which heroin was discovered inside of the vehicle. During that previous arrest, Officer Myers was informed that there was another drug dealer with a similar grey vehicle that kept drugs hidden under its center console. On the date in question, Officer Myers and his partner came upon a grey vehicle that was parked in front of an unattended vehicle. The passenger door of the grey vehicle opened and a strong odor of marijuana was emitted. Officer Myers then observed a digital scale in plain view. While searching the vehicle for the source of the marijuana, several baggies were found scattered throughout the front passenger area and the molding around the center console was not secured. Before becoming a police officer, Officer Myers worked for Lexus as a master technician and had knowledge of the vehicle's make-up. With this knowledge, Officer Myers removed the center console and discovered a large bag of heroin and a firearm. After Franklin's arrest and indictment, his motion to suppress the evidence was denied.

{¶ 20} "'[U]nder the automobile exception to the warrant requirement, the police may search a motor vehicle without a warrant if they have probable cause to believe that the vehicle contains contraband.'" *State v. Alim*, 2017-Ohio-8868, 100 N.E.3d 1119, ¶ 27 (8th Dist.), quoting *State v. Battle*, 10th Dist. Franklin No. 10AP-1132, 2011-Ohio-6661, ¶ 33. Probable cause for a search is defined as a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). It is more than just a hunch. *See State v. Alexander*, 151 Ohio App.3d 590, 2003-Ohio-760, 784 N.E.2d 1225, ¶ 57 (8th Dist.). The *Alim* court explained:

Courts define probable cause in the context of an automobile search as "'a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction.'" *State v. Parrish*, 10th Dist. Franklin No. 01AP-832, 2002-Ohio-3275, ¶ 27, quoting *State v. Kessler*, 53 Ohio St.2d 204, 373 N.E.2d 1252 (1978). Accordingly, "[t]he determination of probable cause is fact-dependent and turns on what the officer knew at the time he made the stop and/or search." *Battle* at ¶ 34.

*Alim* at ¶ 27.

{¶ 21} Turning to the search of the passenger compartment of the vehicle, we note that "[t]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." *State v. Moore*, 90 Ohio St.3d 47, 50-51, 734 N.E.2d 804 (2000), syllabus; *State v. Blevins*, 2016-Ohio-2937, 65 N.E.3d 146, ¶ 29 (8th Dist.). In *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the court held that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825. In *Franklin,* the object of the search was additional contraband, i.e., drugs. In *Taylor*, the object of the search shifted from drugs to the firearm.

{¶ 22} Officer Ribich, testified that he smelled the odor of marijuana during the traffic stop. He decided to search the car and also called for backup assistance. He subsequently learned that there were three outstanding warrants for Taylor. After additional officers arrived, Officer Ribich began his search and located a plastic bag with marijuana and a bag with loose ammunition in the middle console of the

vehicle. Taylor was questioned regarding the ammunition and any illegal contraband and denied having possession of a firearm.

{¶ 23} The facts reveal that upon finding the ammunition, Officer Ribich Mirandized Taylor and began asking him questions regarding if a gun would be found in the vehicle. (Tr. 47.) The trial court then questioned Officer Ribich as follows:

COURT: * * * You testified to the questions of the effect of is there a gun in the car?

WITNESS: Yes.

COURT: It's your sworn testimony that those questions — was that question was asked after Miranda?

WITNESS: Correct.

COURT: But also after finding the ammunition and him knowing you found the ammunition?

WITNESS: I'm not entirely sure if he knew I found ammunition. I Mirandized him. At some point I let him know that ammunition was found and where was the gun at. To me if have you [sic] this ammunition tucked away, there would be a firearm, too. So he at some point — or I advised him I found ammunition and that's why I was asking about if there was a gun in the car.

(Tr. 47-48.)

{¶ 24} Officer Sirl stated that he was notified that marijuana and ammunition was found in the vehicle. (Tr. 55-56.) Officer Sirl stated that based on this information he was searching for additional drugs and a firearm associated with the ammunition. (Tr. 57.)

{¶ 25} In *State v. Thomas*, 2018-Ohio-758, 107 N.E.3d 172 (10th Dist.), Thomas was observed with an ammunition magazine and subsequently a firearm. The officers followed him inside a home and ultimately arrested him. After a suppression hearing, the trial court determined that having ammunition is not evidence of criminal activity. The Tenth District agreed with the trial court. It stated "[h]owever, as the trial court properly noted, 'under Ohio law, possession of ammunition and/or a firearm, in and of itself, is not evidence of criminal activity. * * * Ohio citizens have the right to arm themselves.'" (Dec. 8, 2016 Entry at 5-6.). *Id.* at ¶ 21. In this instance, Officer Ribich's search switched from marijuana to a firearm. Additionally, Officer Sirl searched for a gun based on the discovery of ammunition.

{¶ 26} In *State v. Franklin*, 8th Dist. Cuyahoga No. 99806, 2014-Ohio-1422; *State v. Beavers*, 8th Dist. Cuyahoga No. 88513, 2007-Ohio-2915; and *State v. Burke*, 188 Ohio App.3d 777, 2010-Ohio-3597, 936 N.E.2d 1019 (8th Dist.), each search was confined to the search of drugs. However, in this case the officers expanded their search with the intent to discover a firearm evidenced by the officers' continued questioning, Taylor's adamant denials, and Officer Sirl's admission. Therefore, a warrantless search for drugs occurred and regards to the firearm "the burden shifted to the State to prove probable cause to search and that an exception to the warrant requirement applies." *State v. Laird*, 9th Dist. Medina No. 3213-M, 2002-Ohio-311. The state failed to show an exception to the warrant requirement when the officers shifted their search to the firearm in *Taylor*.

{¶ 27} Further, upon learning that Taylor did not have a valid driver's license, the search cannot be supported as an inventory search because the record failed to show that this component of the search was undertaken in accordance with reasonable police procedures or established routine. *State v. Mesa*, 87 Ohio St.3d 105, 108, 717 N.E.2d 329 (1999), citing *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Officer Ribich testified that the typical areas searched when impounding a vehicle are the passenger compartment and trunk area. (Tr. 49.) However, during this incident, Taylor's hood of his vehicle was lifted and the engine block area was searched. (Tr. 41.) Additionally, the dashboard was dismantled. (Tr. 42.)

{¶ 28} Therefore, the trial court erred in denying the motion to suppress as to the gun found in the dashboard panel.

## II. DECISION OF THE MERIT PANEL

PATRICIA ANN BLACKMON, J.:

{¶ 29} This matter has been returned to the original merit panel for disposition after the en banc court majority opinion determined the propriety of the search behind a displaced panel of the dashboard of George Taylor's vehicle when the odor of marijuana was detected and marijuana was found in the vehicle. With the en banc majority opinion having determined that that portion of the search at issue herein was supported by probable cause, we are again called upon to address the George Taylor's appeal from the denial of his motion to suppress the evidence

obtained against him following the stop and search of his vehicle on Interstate 90 in Westlake. Taylor assigns the following errors for our review:

I.   Reasonable suspicion of criminal activity does not exist when a car is operated with a frame that overlaps slightly with a portion of the car's rear license plate.

II.  Officers exceeded the scope of a plain smell probable cause search for marijuana without justification.

{¶ 30} As the writer of this majority merit panel opinion, I am constrained to follow the law as determined by the en banc majority court; consequently, this majority opinion of the merit panel affirms the trial court's decision.

{¶ 31} On August 15, 2018, following a traffic stop in Westlake, Ohio, Taylor was charged with improperly handling a firearm in a motor vehicle and carrying a concealed weapon, both with forfeiture specifications. He pled not guilty and moved to suppress the state's evidence.

{¶ 32} During the suppression hearing, Westlake Police Patrolman Nicholas Ribich ("Officer Ribich") testified that on July 14, 2018, he was behind Taylor's car, traveling westbound on Interstate 90. According to Officer Ribich, due to the position of the license plate holder of the vehicle, the validation and expiration stickers of the plate were not visible, contrary to Westlake Ordinances 335.09 and R.C. 4503.21. Because he could not see the two required stickers, he decided to make a traffic stop of the vehicle.

{¶ 33} Taylor did not have a valid driver's license and the two other occupants did not have driver's licenses. Officer Ribich also testified that he smelled the odor of marijuana during the traffic stop. He decided to search the car

and also called for backup assistance. He subsequently learned that there were three outstanding warrants for Taylor.

{¶ 34} Westlake Police Patrolman Jarod Sirl ("Officer Sirl") testified that as he assisted with the search, he smelled marijuana in the vehicle and that loose marijuana and ammunition were found in the center console. The officers continued to look for additional marijuana and a handgun. Officer Sirl observed a "separation" between the dashboard and center console that was "kind of separated and noticeably sticking away." He "removed the panel" of the dashboard and found two magazines for a pistol and a loaded firearm. The vehicle was subsequently towed to a lot in North Olmsted.

{¶ 35} The trial court denied the motion to suppress, and Taylor pled no contest to the charges.

## A. Traffic Stop

{¶ 36} In the first assigned error, Taylor argues that Officer Ribich lacked reasonable suspicion to stop his vehicle. He maintains that upon the officer's approach, he could see, based upon the color of the small portion of the sticker that was visible, that the vehicle's registration was current.

{¶ 37} This court's review of a decision on a motion to suppress is a mixed question of law and fact. *State v. Lennon*, 8th Dist. Cuyahoga No. 104344, 2017-Ohio-2753, ¶ 45, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. This court defers to the trial court on its factual findings but

reviews de novo the trial court's application of those facts to the applicable law. *Id.*, citing *Burnside*.

**{¶ 38}** A traffic stop constitutes a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). A police officer may lawfully stop a vehicle if the officer has a reasonable articulable suspicion that the operator has engaged in criminal activity, including a minor traffic violation. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996) (probable cause to stop driver based on the traffic turn signal violation occurring in the officer's presence).

**{¶ 39}** Under R.C. 4503.21, the failure to display in plain view any validation sticker constitutes a minor misdemeanor. *In re G.H.*, 8th Dist. Cuyahoga No. 100274, 2014-Ohio-2269, ¶ 20. This court has previously recognized that a partially obscured validation sticker constitutes a violation of R.C. 4503.21 that supports a traffic stop because "that statute prohibits any obstruction of 'visibility' of a license plate." *State v. Robinson*, 8th Dist. Cuyahoga No. 85149, 2005-Ohio-2834, ¶ 30; *see also In re G.H.* at ¶ 20.

**{¶ 40}** Taylor argues that because the top portion of the sticker was visible and was the color for the current year, the officer lacked reasonable suspicion. However, this court rejected that argument in *In re G.H.* and stated:

> G.H. focuses on the fact that [the] validation sticker was not expired, which Officer Cicero knew based on the color of the sticker. But R.C. 4503.21 does not solely require a current validation sticker; it also mandates the manner in which it must be displayed. The record reveals that the validation sticker was obstructed by [the] license-plate bracket

and that the specific expiration date based on * * * birthday could not be seen. Based on this violation of R.C. 4503.21, Officer Cicero had probable cause to stop the vehicle and request [the] driver's license and registration. *See, e.g., State v. Fredo*, 7th Dist. Columbiana No. 11 CO 5, 2012-Ohio-1496 (a violation of the statute supported the officer's detainment of the driver, despite officer ultimately observing the license plate in the rear cab window of the truck); *State v. Phillips*, 2d Dist. Montgomery No. 22918, 2009-Ohio-3519 (officer's ultimate ability to read the plate does not mean no violation of R.C. 4503.21 occurred; officer was not required to turn defendant loose upon reading the plate).

*Id.* at ¶ 21; *accord State v. Ramsay*, 9th Dist. Lorain No. 06CA009074, 2007-Ohio-6687; *State v. Williams*, 9th Dist. Lorain No. 09CA009679, 2010-Ohio-3667.

{¶ 41} Taylor also argues that this matter is similar to *State v. Brooks*, 11th Dist. Lake No. 2005-L-200, 2007-Ohio-344. In *Brooks*, the officer testified that he stopped the defendant's vehicle because the rear license plate was partially obstructed by a frame. The trial court found, and the court of appeals agreed that the photos of the stop showed that the numbers could, in fact, be read, so the officer lacked probable cause to stop the defendant's vehicle. *Id.* at ¶ 37, 39.

{¶ 42} Here, however, the officer testified that he could not see the numbers because they were concealed by the license plate holder. Therefore, on the record presented, the officer had reasonable suspicion to stop the car for a violation of R.C. 4503.21.

{¶ 43} Accordingly, the first assigned error is without merit.

### B. Scope of the Search

{¶ 44} In the second assigned error, Taylor argues that the officers' search exceeded the scope of the probable cause in this case.

{¶ 45} "'[U]nder the automobile exception to the warrant requirement, the police may search a motor vehicle without a warrant if they have probable cause to believe that the vehicle contains contraband.'" *Alim,* 2017-Ohio-8868, 100 N.E.3d 1119, at ¶ 27, quoting *State v. Battle*, 10th Dist. Franklin No. 10AP-1132, 2011-Ohio-6661, ¶ 33. Probable cause for a search is defined as a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). It is more than just a hunch. *See State v. Alexander*, 151 Ohio App.3d 590, 2003- Ohio-760, 784 N.E.2d 1225, ¶ 57 (8th Dist.). The *Alim* court explained:

> Courts define probable cause in the context of an automobile search as "'a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction.'" *State v. Parrish*, 10th Dist. Franklin No. 01AP-832, 2002-Ohio-3275, ¶ 27, quoting *State v. Kessler*, 53 Ohio St.2d 204, 373 N.E.2d 1252 (1978). Accordingly, "[t]he determination of probable cause is fact-dependent and turns on what the officer knew at the time he made the stop and/or search." *Battle* at ¶ 34.

*Alim* at ¶ 27.

{¶ 46} Turning to the search of the passenger compartment of the vehicle, we note that "[t]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." *State v. Moore*, 90 Ohio St.3d 47, 50-51, 2000-Ohio-10, 734 N.E.2d 804, syllabus; *State v. Blevins*, 2016-Ohio-2937, 65 N.E.3d 146, ¶ 29 (8th Dist.). Accordingly, the officers properly discovered the marijuana and ammunition located in the center console.

{¶ 47} Turning to the evidence found after Officer Sirl removed a portion of the dashboard, as discussed in the prior section of this opinion, the en banc majority of this court concluded that after finding marijuana in the passenger compartment and searching behind the "visibly displaced panel of the dashboard/center console," this search did not exceed the scope of the officers' probable cause.

{¶ 48} Applying the controlling caselaw, including the law as set forth in the the en banc majority opinion, this assigned error is without merit.

{¶ 49} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

EILEEN T. GALLAGHER, A.J., CONCURS WITH SEPARATE OPINION;
ANITA LASTER MAYS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

EILEEN T. GALLAGHER, A.J., CONCURRING:

{¶ 50} I concur with the majority merit panel opinion, but write separately to express my position that the resolution of Taylor's second assignment of error is

not merely predicated on our obligation to apply the law set forth in the en banc opinion. Rather, our resolution of the second assignment of error is necessitated by well-established precedent in the state of Ohio and the United States Supreme Court.

{¶ 51} As clearly established by the United States Supreme Court, once Officers Ribich and Sirl had probable cause to conduct a search of Taylor's vehicle, they were justified in searching the passenger compartment "of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 U.S. 798, at 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Necessarily, the scope of the officer's search included the passenger compartment of Taylor's vehicle. *See Franklin*, 8th Dist. Cuyahoga No. 99806, 2014-Ohio-1422, at ¶ 23.

{¶ 52} And, contrary to Taylor's position on appeal, the officers were not required to obtain a warrant to search additional portions of Taylor's vehicle once they discovered marijuana and ammunition in the center console. As succinctly explained by the Tenth District:

> The smell of marijuana provided the officers with probable cause to search the passenger compartment of [defendant]'s car and that probable cause does not end once some drugs are found. *State v. Maughmer*, 4th Dist. Ross No. 09CA3127, 2010-Ohio-4425, ¶ 2 (drugs found during search of glove box even after other drugs already found); *State v. Bazrawi*, 10th Dist. Franklin No. 12AP-1043, 2013-Ohio-3015, ¶ 29-31 (gun lawfully found after already discovering drugs). Simply put, the probable cause justifies the search of the entire car.

*State v. Taylor*, 10th Dist. Franklin No. 14AP-857, 2015-Ohio-3252, ¶ 22; *see also State v. Donaldson*, 6th Dist. Wood No. WD-18-034, 2019-Ohio-232, ¶ 27 ("'an

officer searching a car for drugs and paraphernalia need not stop after each discovery and determine again whether there is [probable] cause to continue the search.'"), quoting *United States v. Deysie*, D.Ariz. No. CR-14-8112-001-PCT-G, 2014 U.S. Dist. LEXIS 108961, 10 (Aug. 7, 2014). Here, the discovery of the marijuana and ammunition only provided the officers with "additional indicia of drug activity" to justify the continued search of Taylor's vehicle. *See Franklin* at ¶ 24. Accordingly, the scope of the search was reasonable and within the confines of the automobile exception.

ANITA LASTER MAYS, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 53} I respectfully concur in part and dissent in part from the majority's opinion and would find that the officers exceeded the scope of the initial search for drugs based on the facts and law below. I would find that the trial court erred in not granting the motion to suppress the firearm.

{¶ 54} The facts revealed that Westlake Police Patrolman Nicholas Ribich ("Officer Ribich") testified that on July 14, 2018, he was behind Taylor's car, traveling westbound on Interstate 90. According to Officer Ribich, due to the position of the license plate holder of the vehicle, the validation and expiration stickers of the plate were not visible, contrary to Westlake Ordinances 335.09 and R.C. 4503.21. Because he could not see the two required stickers, he decided to make a traffic stop of the vehicle. Officer Ribich on cross-examination acknowledged that he could see that the two stickers were the color of the current year's validation stickers, but they were partially covered. (Tr. 37-38.) Officer Ribich ran the license

plate number through his vehicle computer and learned that the registration was valid and up-to-date. (Tr. 39.) With no additional traffic violations, this de minimis violation was used as a pretextual stop.

{¶ 55} Nonetheless, upon stopping the vehicle an odor of marijuana was detected. "'[U]nder the automobile exception to the warrant requirement, the police may search a motor vehicle without a warrant if they have probable cause to believe that the vehicle contains contraband.'" *Alim*, 2017-Ohio-8868, 100 N.E.3d 1119, at ¶ 27, quoting *State v. Battle*, 10th Dist. Franklin No. 10AP-1132, 2011-Ohio-6661. To begin a search of the passenger compartment of a vehicle, it is noted that "[t]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." *State v. Moore*, 90 Ohio St.3d 47, 50-51, 2000-Ohio-10, 734 N.E.2d 804, syllabus; *State v. Blevins*, 2016-Ohio-2937, 65 N.E.3d 146, ¶ 29 (8th Dist.). In this case, the initial object of the search was additional contraband, i.e., drugs. However, I find that the object of the initial search shifted from drugs to a firearm.

{¶ 56} After beginning his search, Officer Ribich located a plastic bag with marijuana and a bag with loose ammunition in the middle console of the vehicle. Taylor was questioned regarding the ammunition and any illegal contraband and denied having possession of a firearm. Upon finding the ammunition, Office Ribich Mirandized Taylor and began asking him questions regarding if a gun would be found in the vehicle. (Tr. 47.) The trial court then questioned Officer Ribich

regarding finding a gun, his actions and Taylor's knowledge. Officer Ribich notably responded as follows,

> THE WITNESS: I'm not entirely sure if he knew I found ammunition. I Mirandized him. At some point I let him know that ammunition was found and where was the gun at. To me if have you [sic] this ammunition tucked away, there would be a firearm, too. So he at some point — or I advised him I found ammunition and that's why I was asking about if there was a gun in the car.

(Tr. 49.)

{¶ 57} Officer Sirl stated that he was notified that marijuana and ammunition was found in the vehicle. (Tr. 55-56.) Officer Sirl stated that based on this information he was searching for addition drugs and a firearm associated with the ammunition. (Tr. 57.)

{¶ 58} In *State v. Thomas*, 2018-Ohio-758, 107 N.E.3d 172 (10th Dist.), Thomas was observed with an ammunition magazine and subsequently a firearm. Officers followed him inside a home and ultimately arrested him. After a suppression hearing, the trial court determined that having ammunition is not evidence of criminal activity. The Tenth District agreed with the trial court. It stated "[h]owever as the trial court properly noted, 'under Ohio law, possession of ammunition and/or a firearm, in and of itself, is not evidence of criminal activity. * * * Ohio citizens have the right to arm themselves.'" (Dec. 8, 2016 Entry at 5-6.). *Id.* at ¶ 21. In this instance, Officer Ribich's search switched from marijuana to a firearm. Additionally, Officer Sirl's search for a gun was based on the discovery of ammunition.

{¶ 59} I would find that the officers expanded their search with the intent to discover a firearm evidenced by the officers' continued questioning, Taylor's adamant denials, and Officer Sirl's admission. Therefore, a warrantless search for drugs occurred and regards to the firearm "the burden shifted to the State to prove probable cause to search and that an exception to the warrant requirement applied." *State v. Laird*, 9th Dist. Medina C.A. No. 3213-M, 2002 Ohio App. LEXIS 272, 7-8 (Jan. 30, 2002). I find that the state failed to show an exception to the warrant requirement when the officers shifted their search to the firearm in this case.

{¶ 60} Further, upon learning that Taylor did not have a valid driver's license, the search cannot be supported as an inventory search because the record failed to show that this component of the search was undertaken in accordance with reasonable police procedures or established routine. *State v. Mesa*, 87 Ohio St.3d 105, 108, 1999-Ohio-253, 717 N.E.2d 329, citing *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Officer Ribich testified that the typical areas searched when impounding a vehicle is the passenger compartment and trunk area. (Tr. 49.) However, during this incident, Taylor's hood of his vehicle was lifted and the engine block area was searched. (Tr. 41.) Additionally, the dashboard was dismantled. (Tr. 42.)

{¶ 61} Therefore, I would find that the trial court erred in denying the motion to suppress as to the gun found in the dashboard panel.